LYNN CUNNINGHAM, Plaintiff-Appellant, v. MERRILL HUFFMAN *et al.*, Defendants-Appellees.

Fourth District   No. 4—91—0500

Opinion filed January 16, 1992.

Phebus, Tummelson, Bryan & Knox, of Urbana (Joseph W. Phebus and Nancy J. Glidden, of counsel), for appellant.

Keith E. Emmons and Gregg W. Bonelli, both of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

On March 21, 1989, plaintiff Lynn Cunningham brought a medical malpractice action in the circuit court of Champaign County against defendants Merrill Huffman, Melinda A. Dabrowski, J. Roger Powell, and Carle Clinic Association (Carle). On September 19, 1989, the circuit court dismissed counts I and II of plaintiff's complaint (both

against Huffman and Carle) with prejudice, and dismissed counts III (against Dabrowski and Carle) and IV (against Powell and Carle) with leave to amend. On November 28, 1989, the trial court denied plaintiff's motion to reconsider the dismissal of counts I and II and further denied plaintiff's motion to amend the complaint by adding count V against Carle. On April 1, 1990, the trial court conducted a hearing on plaintiff's motion to reconsider, or in the alternative, for a Rule 308 finding to allow an interlocutory appeal (see 134 Ill. 2d R. 308), and on a motion to amend the complaint by adding a count VI against Carle. Plaintiff's motions were denied. On May 21, 1991, plaintiff moved to voluntarily dismiss counts III and IV, which motion was allowed on May 30, 1991. Thereafter, plaintiff appealed. The only issue raised on appeal is whether the continuous course of treatment doctrine, as recognized in Illinois and applied to the facts of this case, requires reversal of the circuit court orders dismissing counts I and II of plaintiff's complaint for medical malpractice and denying plaintiff leave to amend the complaint by adding counts V and VI.

### PLAINTIFF'S COMPLAINT

Count I of plaintiff's complaint attempts to allege a cause of action for general negligence against defendants Huffman and Carle. It alleges Huffman is a physician specializing in obstetrics and gynecology, who is a member of the Carle Association of Physicians whose acts or omission complained of were in the course and scope of his work for Carle. On March 1, 1977, Huffman inserted an intrauterine device (IUD) into plaintiff. On April 8, 1980, he inserted another IUD into plaintiff, but allegedly failed to remove the IUD inserted in 1977. On March 12, 1981, Huffman performed a tubal ligation on plaintiff, but removed only one of the IUDs. The remaining IUD was not removed until December 19, 1988, and its removal was by a physician not associated with Carle. It is alleged that, had Huffman possessed and applied the knowledge, skill, and care of a reasonably well-qualified specialist in obstetrics and gynecology, he would have removed the first IUD before inserting the second IUD, would have removed both IUDs for a period of time before the tubal ligation to ascertain the necessity of the operation, and would have left neither IUD in plaintiff after the tubal ligation. Plaintiff invokes the doctrine of *res ipsa loquitur*, alleges her injuries were proximately caused by the conduct of defendant, and further alleges that plaintiff's complaint is timely filed for one or more of the following reasons: (1) the IUD inserted on March 1, 1977, or April 8, 1980, remained in plaintiff until December 19, 1988, constituting a continuous course of treatment; (2)

plaintiff remained a patient of Huffman and other physicians at Carle, for gynecological purposes, until December 9, 1988; and (3) Huffman failed to advise plaintiff that he left the IUD in her and advised her that her problems and complications arose from causes other than the presence of the IUD.

Count II is also a cause of action against Huffman and Carle based on a theory of negligence and attempts to allege the negligence in specific acts. It alleges the same acts and omissions as alleged in count I. The only difference between the counts is the allegations of negligence, which are stated in count II as follows:

"8. That in the aforesaid course of treatment, Defendant Huffman in the course and scope of his work with Carle Clinic Association was guilty of negligence in one or more of the following ways or a combination thereof:

A. Failed to remove the intrauterine device of March 1, 1977, before inserting the intrauterine device of April 8, 1980.

B. Failed to remove the intrauterine device of March 1, 1977, and the intrauterine device of April 8, 1980, for a trial period prior to performing the tubal ligation of March 12, 1981, so as to ascertain whether the plaintiff was experiencing an adverse reaction to one of said intrauterine devices.

C. Failed to remove either the intrauterine device of March 1, 1977, or of April 8, 1980, when he performed the tubal ligation of March 12, 1981, with the result that said intrauterine device was needlessly left in the plaintiff until removed by another physician on December 19, 1988, thus constituting a continuous course of treatment by the defendant lasting until December 19, 1988."

## Motion To Dismiss

Pursuant to sections 2—619(a)(5) and 13—212 of the Illinois Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, pars. 2—619(a)(5), 13—212), Huffman and Carle moved to dismiss counts I and II. In the motion, defendants direct the court's attention to the affidavit of the anonymous physician attached to plaintiff's complaint which indicates the last chart entry of Huffman with regard to plaintiff was on December 14, 1983. Attached to the motion was Huffman's affidavit which stated he first provided medical care or treatment to plaintiff on December 30, 1974, and last provided medical care or treatment on December 14, 1983. The motion then concludes that since more than four years have elapsed between Huffman's last care and treatment of plaintiff and the filing of the complaint, and since the

doctrine of continuous course of treatment is not the law of Illinois, counts I and II should be dismissed.

In a memorandum filed August 2, 1989, the trial court found the defendants' motion to dismiss counts I and II should be allowed. The trial court found that plaintiff filed this cause of action more than five years after termination of care and treatment. In addition, there was no showing that the continuous course of treatment doctrine was or should be the law of Illinois, or even if it were the law of Illinois, that there was any continuing care by Huffman or by Carle subsequent to December 14, 1983.

### PLAINTIFF'S MOTIONS TO RECONSIDER AND TO AMEND THE COMPLAINT

In her first motion to reconsider the trial court's findings, plaintiff points out that the doctrine of continuous course of treatment was only one reason alleged by her that the complaint was timely filed against Huffman and Carle. The additional reason was the doctrine of estoppel enunciated in *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869, which the trial court's memorandum did not address.

Plaintiff also filed a motion for leave to amend her complaint by adding count V. Count V attempts to allege a cause of action against Carle based on specific negligent acts or omissions. Count V alleges Carle is an association of physicians engaged in the practice of medicine in Illinois and maintains an obstetrical and gynecological service including Huffman, Dabrowski and Powell, all physicians employed by Carle and held out by Carle as specialists in obstetrics and gynecology. In addition to the care and treatment from Huffman previously alleged in counts I and II, plaintiff alleged that since a tubal ligation is a prevention of pregnancy and, if improperly performed, the woman may still become pregnant, a continuous course of treatment was involved. Further allegations include that subsequent to the tubal ligation, plaintiff experienced bleeding, for which she was treated by defendant on various occasions, including the administration of Provera. On November 25, 1988, X rays were taken of plaintiff at Carle Hospital which were viewed by Powell and which revealed the presence of an IUD. As specific acts or omissions of negligence, plaintiff alleged: (1) failure to remove the March 1, 1977, IUD before inserting another IUD on April 8, 1980; (2) failure to remove both for a period of time before the tubal ligation in order to ascertain whether plaintiff was experiencing an adverse reaction to one of the IUDs; (3) failure to remove one of the two IUDs during the tubal ligation; (4) failure to diagnose that an IUD had been left in plaintiff after the tubal ligation; (5) prescribing Provera for internal bleeding without diagnosing the

cause of the bleeding; (6) failure to effect prompt removal of the IUD; (7) rather than confirming the presence of the IUD, recommending a hysterectomy in an attempt to obscure the fact plaintiff's problems were caused by the IUD; (8) failure to timely diagnose the continued presence of the IUD following the tubal ligation; and (9) failing to promptly remove the IUD after its presence was diagnosed. Supplemental affidavits of plaintiff's attorney and the anonymous physician were filed in support of plaintiff's complaint.

After finding defendants were not estopped from asserting plaintiff's failure to comply with the period of repose and statute of limitations in section 13—212 of the Code, and that proposed count V is a restatement of original counts I and II previously dismissed, the trial court denied plaintiff's motions to reconsider and for leave to amend the complaint. Again, plaintiff moved to reconsider and amend the complaint. This motion to reconsider was directed at the trial court's order refusing to allow plaintiff to amend the complaint by adding count V. In the motion, plaintiff argues Powell, Dabrowski, and Huffman were all members of Carle, plaintiff was continuously under their care from March 1, 1977, to December 9, 1988, and that prior to November 25, 1988, plaintiff, acting as a reasonable person, "did not know nor should have known of the continued presence of the intrauterine device." Plaintiff cited this court's opinion in *Neaterour v. Holt* (1989), 188 Ill. App. 3d 741, 544 N.E.2d 846, and several out-of-State cases in support of the application of the continuous course of treatment rule in this case.

Plaintiff's second motion for leave to amend the complaint sought to add count VI, an action for negligence against Carle. The allegations of count VI are identical to those of count V with these exceptions. At the end of paragraph two is alleged the conclusion that the treatment by Huffman, Dabrowski and Powell constitutes a "continuance [*sic*] course of treatment" for gynecological problems arising out of Huffman's insertion of an IUD on March 1, 1977, or April 8, 1980. Additional allegations of negligent conduct against defendant's physicians are that they, in the course of their employment, were negligent in one or more of the following ways or a combination thereof: (1) inserted an IUD on March 1, 1977, or April 8, 1980, which was embedded in the uterus wall and remained so embedded until removed on November 25, 1988, by a physician not associated with Carle; (2) incorrectly assumed the IUD inserted on March 1, 1977, was no longer present in plaintiff's uterus at the time the April 8, 1980, IUD was inserted and failed to perform diagnostic tests to verify that fact; (3) failed to establish an adequate system of recordkeeping to inform sub-

sequent treating physicians that the March 1, 1977, IUD was not removed prior to the insertion of another IUD on April 8, 1980, and that an IUD was left in plaintiff's uterus after the tubal ligation; (4) failed to diagnose the IUD had been left in plaintiff following the tubal ligation, from March 12, 1981, to November 25, 1988; and (5) administered Provera to plaintiff for uterine bleeding without first performing a biopsy, which would have revealed the presence of the IUD. In count VI, as in count V, plaintiff alleged she continuously remained a patient of the obstetrical-gynecological service of Carle until December 9, 1988. Count VI more specifically alleged that the continuous treatment was in regard to gynecological problems and complaints arising out of the presence of one or both IUDs inserted by Huffman, and that the acts of negligence alleged occurred at various times during the period from March 1, 1977, to and including December 9, 1988. Plaintiff further alleged in count VI that the insertion of one of the IUDs in such a manner that it was embedded in the uterus wall constituted a continuing negligent act which continued until its presence was revealed to plaintiff on November 25, 1988, or until it was removed on December 9, 1988. In support of the motion for reconsideration, plaintiff filed an affidavit, and the discovery depositions of Drs. James A. Yambert, Suzanne Trupin, Powell, Dabrowski, and Huffman. The discovery deposition of plaintiff was also considered by the trial court. After considering written argument of counsel, plaintiff's motions were denied.

This court, too, has reviewed the discovery depositions. However, for the purposes of this disposition, only a summation is necessary. On March 1, 1977, Huffman inserted an IUD in plaintiff. Subsequently, plaintiff began complaining of cramping, an unusually heavy and lengthy menstrual period, and mid-cycle spotting. A new IUD was inserted on April 8, 1980. Huffman stated plaintiff felt the first IUD had been expelled and she wanted a new one. Plaintiff says Huffman told her a new IUD would be necessary every three years. She also felt so miserable she thought a new IUD would help. Before inserting the second IUD, Huffman's probing did not disclose the presence of the earlier implanted IUD. Plaintiff continued to have problems, and in January 1981, she explored with Huffman the possibility of a tubal ligation. The tubal ligation was performed on March 12, 1981. One IUD was removed at that time. Plaintiff stated in her deposition that there was no change in her condition thereafter. Huffman last saw plaintiff on December 14, 1983, although plaintiff stated she called his office on December 27, 1983, regarding a prescription. Plaintiff fur-

ther stated in her deposition that she continued her prescription for Dyazide until after she saw Trupin.

Plaintiff next saw Suzanne Trupin, a physician board certified in obstetrics and gynecology. Trupin is not associated with Carle. She saw plaintiff on August 23, 1985, for a premenstrual syndrome (PMS) consultation. Plaintiff explained she went to see Trupin to determine whether the symptoms she experienced were caused by PMS. Plaintiff saw Trupin for less than one hour on only this one occasion. Plaintiff also explained that she did not intend to make Trupin her regular physician and she intended to retain her relationship with Carle Clinic.

On June 19, 1986, plaintiff sought care for her condition at Carle, but from doctors other than Huffman. She initially asked to see Powell, but was told she would have to wait months. She then asked to see Dr. Fay, who was also not available for several months. Dabrowski was the only doctor with an opening. Dabrowski's care of plaintiff continued into August 1988. Plaintiff's complaints to Dabrowski also concerned menstrual cycle abnormalities. Dabrowski treated plaintiff with medication.

On November 25, 1988, plaintiff was seen in Carle's emergency room by Yambert. At that time, an X-ray photograph revealed the presence of an IUD. Yambert referred plaintiff to Powell. Powell explained he was on call that day. Powell saw her that day and again on December 9, 1988. A pelvic ultrasound vaginal probe failed to disclose the presence of the IUD. Powell understood plaintiff's problem to be menstrual cycle abnormalities. An IUD was later removed by a physician not associated with Carle.

Under section 2—619 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), a party may seek involuntary dismissal of a cause of action based on defects or defenses enumerated in the statute. For example, section 2—619(a)(5) of the Code allows a defendant to seek dismissal if the action was not commenced within the time limited by law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(5).) On review of the trial court's ruling on a motion to dismiss, all well-pleaded facts alleged in the complaint are taken as true and any allegations which are mere conclusions, unsupported by allegations of specific facts, are not admitted. Therefore, generally, the test to be applied by the reviewing court is whether it appears no set of facts may be proved to entitle plaintiff to recover from defendant. (*Toys "R" Us, Inc. v. Adelman* (1991), 215 Ill. App. 3d 561, 564, 574 N.E.2d 1328, 1330.) However, because the defect or defense may not be apparent on the face of the pleading attacked, a section 2—619 motion may be supported by affi-

davit. In *Rowan v. Novotny* (1987), 157 Ill. App. 3d 691, 693-94, 510 N.E.2d 1111, 1112-13, section 2—619 motions were discussed as follows:

> "The purpose of section 2—619 is primarily that of affording a means of obtaining at the outset of a case a summary disposition of issues of law or of easily proved issues of fact. The basis of the motion must go to an entire claim or demand. (Ill. Ann. Stat., ch. 110, par. 2—615, Historical and Practice Notes (by Albert E. Jenner, Jr., Philip W. Tone and Arthur M. Martin) (Smith-Hurd 1985).) Although defects that appear on the face of the pleading attacked may, according to the letter of the section, be reached by a section 2—619 motion, the section is not designed for that purpose. (*Leitch v. Hine* (1946), 393 Ill. 211, 66 N.E.2d 90.)"

(See also *Toys "R" Us*, 215 Ill. App. 3d at 564, 574 N.E.2d at 1330; *Michel v. Gard* (1989), 181 Ill. App. 3d 630, 635, 536 N.E.2d 1375, 1379.) In some instances, there is a great deal of similarity between section 2—619 motions to dismiss and motions for summary judgment, particularly where the ruling on the motion to dismiss requires a determination of fact. Under these circumstances, when the documents establish that there is no issue of material fact, or that crucial issues of material fact are refuted by affirmative matters, the section 2—619 motion may be granted. See *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1055-56, 473 N.E.2d 444, 448-49.

In this case, the court is dealing with a question pertaining to the applicability of the statute of repose. Ordinarily, the application of the statute of repose is a question of law, especially where the last contact between plaintiff and defendant in a medical malpractice case has been established. However, here, plaintiff argues the continuous treatment doctrine tolls the running of the statute of repose, and the court has to determine (1) whether the continuous treatment doctrine applies, and (2) if it applies, under the facts of this case, was there a time when continuous treatment discontinued such that the statute of repose began to run as a matter of law. This is similar to the factual determination which may need to be made when the application of the appropriate statute of limitations is considered in light of the time of discovery rule. That, too, can be the subject of summary judgment only if it can be determined that no genuine issue of material fact exists. See *Witherell*, 85 Ill. 2d at 156, 421 N.E.2d at 874; *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, 421 N.E.2d 864, 868-69.

■ There is, of course, a significant difference between a statute of limitations and a statute of repose. In relation to physician malpractice, the repose period is contained in subsection (a) of section 13—212 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 13—212(a)), which states in relevant part: "in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death."

This court has previously considered how the continuous course of treatment doctrine affects the operation of the statute of repose. In *Neaterour*, this court discussed the continuous course of treatment doctrine and stated *dictum* recognizing the doctrine applies to the statute of repose such that later, in *Daly v. Carmean* (1991), 210 Ill. App. 3d 19, 29, 568 N.E.2d 955, 961, this court adopted the reasoning in *Neaterour* that the statute of repose is triggered only on the last day of treatment, and added that as long as the treatment is for the same condition, there is no requirement that the negligence have continued throughout the treatment.

■ At oral argument, plaintiff's attorney acknowledged that the action against Huffman individually is probably barred by the statute of repose, but plaintiff's focus on appeal was directed at reinstating the cause of action against Carle for the negligence of members of the association throughout the course of treatment of plaintiff at Carle, including Huffman's negligence. Based on this concession, without deciding whether the individual action against Huffman may be maintained based on the continuous course of treatment doctrine, the dismissal of counts I and II as to Huffman is affirmed.

■ As to Carle, the trial court erred in dismissing counts I and II *without leave to amend* and further erred by refusing to allow plaintiff to amend her complaint along the lines suggested in counts V and VI. We realize there is a good deal of duplication in these counts which may be the subject of further motions in the trial court.

In ruling that the trial court erred, this court is relying on the decision of *Offerdahl v. University of Minnesota Hospitals & Clinics* (Minn. 1988), 426 N.W.2d 425. *Offerdahl* also involved the insertion of IUDs. Plaintiff, in 1972, had a Dalkon Shield IUD inserted by a physician not associated with defendant. In 1973, plaintiff was hospitalized in the University Hospital for pelvic inflammatory disease (PID). The Dalkon Shield was not removed. On June 28, 1977, she returned to the University Hospital complaining of abdominal pain and excessive bleeding during menstruation. After the Dalkon Shield was removed, a Copper-7 IUD was inserted by Dr. Felton. Plaintiff continued to ex-

perience pain and on May 9, 1978, returned to the hospital and asked that the IUD be removed. Because of suspected pregnancy, the IUD was not removed, but plaintiff was told to return in one week if pregnancy tests were negative. Although plaintiff was not pregnant, she did not return until January 28, 1979, at which time she was again experiencing severe pain and vaginal bleeding and discharge. The IUD was removed, and plaintiff was admitted for treatment. She was diagnosed as having chronic PID. The parties disputed when the treatment for PID ended. Not disputed was the fact plaintiff underwent a number of surgeries, including the removal of her left fallopian tube and ovary in 1981. Plaintiff then received fertility counseling by Dr. Nagel and in 1984 gave birth. In 1982, plaintiff sued A.H. Robins Company, Inc., for damages resulting from the use of the Dalkon Shield. In 1984, that case was settled. On June 19, 1984, she sued the University for malpractice. In *Offerdahl*, it was held that where the patient seeks treatment from a clinic as a whole, rather than from an individual physician, it is the treatment from the clinic as a whole and not that of the individual physician alleged to have committed the act of malpractice which is relevant to determining when treatment terminated and the statutory period began to run.

Defendant Carle contends it is only vicariously liable for the acts of Huffman and, since the physician-patient relationship between Huffman and plaintiff ended in 1983, it cannot be liable for any acts of negligence by Huffman. Based on the allegations, Carle is an association of physicians and plaintiff sought care from the gynecological-obstetrical department of the clinic association. By adopting the rationale in *Offerdahl*, we reject the contention of defendant.

Defendant Carle further argues that plaintiff's relationship to Carle was interrupted when she went to see Trupin and because of the 2½-year period which elapsed between when plaintiff last saw Huffman and when she first saw Dabrowski. Surely a physician-patient relationship is not automatically terminated merely because the patient seeks a second opinion. Furthermore, *Aznel v. Gasso* (1987), 154 Ill. App. 3d 785, 507 N.E.2d 83, relied on by defendant, is factually distinguishable. In *Aznel*, plaintiff saw defendant from March 1971 to December 1973. Defendant's treatment of plaintiff ceased when defendant moved to Florida and referred plaintiff back to plaintiff's family physician. At that time, the physician-patient relationship ended. In January 1984, plaintiff flew to Florida to be examined by defendant for the first time in more than 10 years. Clearly a single consultation after a decade of nontreatment cannot be construed as a continuous course of treatment.

██ We are not deciding as a matter of law that a continuous course of treatment existed in this case. We are saying that it cannot be determined as a matter of law that a continuous course of treatment did not exist. A question of fact exists which must be considered by the trier of fact. Plaintiff should be allowed her day in court.

Accordingly, the judgment of the circuit court is affirmed as to Huffman. However, as to Carle, the judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

STEIGMANN and KNECHT, JJ., concur.