LYNN CUNNINGHAM, Appellee, v. MERRILL
HUFFMAN *et al.*, Appellants.

*Opinion filed February 25, 1993.—Rehearing
denied March 29, 1993.*

McMORROW, J., took no part.

MILLER, C.J., dissenting.

Keith E. Emmons, Todd M. Tennant and Laura D. Clower, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellant Carle Clinic Association.

Phebus, Tummelson, Bryan & Knox, of Urbana (Nancy J. Glidden and Joseph W. Phebus, of counsel), for appellee.

Marvin Kamensky, Michael B. Brohman, Marci A. Firfer and Lee Levin, of Kamensky & Rubinstein, of Lincolnwood, for *amicus curiae* Associated Physicians Insurance Co.

Hinshaw & Culbertson, of Chicago (Stephen R. Swofford, of counsel), for *amicus curiae* Illinois Association of Trial Defense Counsel.

Scott D. Lane and Thomas P. Hartnett, of Lane & Lane, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE HEIPLE delivered the opinion of the court:

The case before us today requires us to determine whether the Illinois medical malpractice statute of re-

pose can countenance a judicially imposed exception in the form of the so-called continuous course of treatment doctrine. (Ill. Rev. Stat. 1989, ch. 110, pars. 2—619(a)(5), 13—212.) That is to say, whether the Illinois four-year statute of repose is tolled until the date of last treatment when there is an ongoing patient/physician relationship. While several of our sister States and our own appellate court have embraced the doctrine, the issue is of first impression with us.

The facts of this case are set forth in greater detail in the opinion below. (223 Ill. App. 3d 878.) We highlight only those facts necessary for an understanding of this appeal.

On March 1, 1977, Dr. Merrill Huffman, a physician specializing in obstetrics and gynecology and a member of the Carle Clinic Association (Carle), inserted an intrauterine device (IUD) into plaintiff, Lynn Cunningham. Subsequently, plaintiff began complaining of cramping, an unusually heavy and lengthy menstrual period, and mid-cycle spotting. Then, on April 8, 1980, after Huffman's probing failed to disclose the presence of the 1977 IUD, he inserted another.

Plaintiff continued to experience medical problems. In January 1981, she explored the possibility of tubal ligation with Huffman. On March 12, 1981, Huffman performed the tubal ligation. At that time he also removed an IUD. Despite this procedure, there was no change in her condition. Plaintiff last saw Huffman on December 14, 1983.

On June 19, 1986, plaintiff again sought care for her condition at Carle, but this time from doctors other than Huffman. Plaintiff made an appointment with Dr. Melinda Dabrowski, the only doctor with an opening at the time. Plaintiff's complaints to Dabrowski also concerned menstrual cycle abnormalities. Dabrowski's care of plaintiff continued into August 1988.

On November 25, 1988, Dr. James Yambert attended to plaintiff in Carle's emergency room for abdominal pain. At that time, an X-ray photograph revealed a foreign object in plaintiff's pelvic region consistent with an IUD. Yambert then referred plaintiff to Powell, the OB-GYN doctor on call at the time. Powell ordered an ultrasound vaginal probe which failed to disclose the presence of the IUD. Powell did not review the X ray taken earlier that day. Powell understood the plaintiff's problem to be menstrual cycle abnormalities.

On December 19, 1988, plaintiff underwent surgery wherein a physician not associated with Carle Clinic removed an IUD.

On March 21, 1989, plaintiff brought a four-count medical malpractice lawsuit against defendants Huffman, Dabrowski, Powell, and Carle. Count I of plaintiff's complaint alleged a cause of action for general negligence against Huffman and Carle. Count II also alleged negligence against Huffman and Carle, but plaintiff alleged negligence of specific acts. Counts III and IV alleged negligence against Dabrowski and Powell but those counts have since been voluntarily dismissed.

The circuit court of Champaign County dismissed counts I and II of plaintiff's complaint with prejudice, finding that plaintiff was time-barred pursuant to sections 2—619(a)(5) and 13—212 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, pars. 2—619(a)(5), 13—212), and that there was no showing that the continuous course of treatment doctrine was or should be the law in Illinois.

Section 13—212 of the Code provides, in relevant part, that "in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." (Ill. Rev. Stat. 1989, ch. 110, par. 13—212(a).) Relying on the decisions

of several other jurisdictions, plaintiff argued that the continuous course of treatment doctrine tolled the running of the statute of repose until the end of the patient/physician relationship, so long as there has been continuous treatment—whether negligent or not—for a condition occasioned by a prior negligent act. See *Metzger v. Kalke* (Wyo. 1985), 709 P.2d 414; see also *Comstock v. Collier* (Colo. 1987), 737 P.2d 845, 849 (and cases cited; although cases relied upon by *Comstock* did not require continued negligence, *Comstock* court did).

The trial court also denied plaintiff's motion for leave to amend her complaint by adding count V, which alleged a cause of action against Carle based on specific negligent acts or omissions. Count V further averred that a continuous course of treatment was involved because a tubal ligation is a prevention of pregnancy and, if not properly performed, the woman may still become pregnant.

In plaintiff's second motion for leave to amend the complaint, she sought to add count VI. The trial court denied this motion as well. The allegations of count VI were identical to those of count V except that it alleged that the treatment by Huffman, Dabrowski, and Powell constituted a continued course of treatment for gynecological problems arising out of Huffman's insertion of the first IUD on March 1, 1977, or the second IUD on April 8, 1980. As in count V, count VI alleged that she continuously remained a patient of the obstetrical-gynecological service of Carle until December 9, 1988. Plaintiff further alleged that the insertion of one of the IUDs in a manner that caused it to be imbedded in the uterus constituted a continuing negligent act which endured until its presence was revealed to plaintiff on November 25, 1988, or until it was removed on December 19, 1988. The trial court denied plaintiff's motions.

On appeal, the appellate court affirmed the dismissal of counts I and II as to Huffman, but held that the trial court erred in dismissing those same counts, as to Carle, without leave to amend. The appellate court further held that the trial court erred in refusing to allow plaintiff to amend her complaint along the lines suggested in counts V and VI. The appellate court stated that in medical malpractice actions, the statute of repose is triggered only on the last day of treatment, and if the treatment is for the same condition, there is no requirement that the negligence be continuous throughout the treatment.

Carle now appeals to this court and asks us to determine: (1) whether the continuous course of treatment doctrine applies to a multispecialty health care institution, and (2) whether the appellate court disregarded the doctrine of *res judicata* when it permitted a claim against an employer for the acts or omissions of an employee, in the face of a judgment on the merits in favor of the employee for the same acts or omissions.

## CONTINUOUS COURSE OF TREATMENT

Subject to the fraudulent concealment exception provided in section 13—215 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 13—215), the legislature has clearly stated that no "action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury." Confronted with the clear, unambiguous language of the statute, we cannot adopt the continuous course of treatment doctrine as formulated by the appellate court.

We find it significant that the General Assembly has amended section 13—212 numerous times but has never expressly provided for any exception to the statute of repose except for cases of fraudulent concealment. Had the General Assembly intended the continuous course of

treatment doctrine to be the law of this State, it could have specifically provided so, as the legislative bodies in New York and Texas have done. (See N.Y. Civ. Prac. L. & R. 214—a (McKinney Supp. 1992); Tex. Rev. Civ. Stat. Ann. art. 4590i, §10.01 (West Supp. 1992).) In Michigan, the legislature has come full circle. In 1975, the Michigan legislature amended its medical malpractice limitations provision to include a codification of the continuous course of treatment doctrine. (1975 Mich. Pub. Act 142; Mich. Comp. Laws §600.5838(1) (1987).) By 1986, however, after a 10-year experiment with the doctrine, the Michigan legislature eliminated the provision. (1986 Mich. Pub. Act 178; Mich. Comp. Laws §600.5838 (Supp. 1992).) Given the attention paid to the so-called "medical malpractice crisis" in recent years, it is fair to assume that the Illinois General Assembly was aware of such developments and purposefully declined to act.

We are not alone in our interpretation today. The courts in Delaware, Kansas and Maryland have also come to the same conclusion when confronted with statutes similar to ours. (See *Ewing v. Beck* (Del. 1987), 520 A.2d 653; *Hecht v. First National Bank & Trust Co.* (1971), 208 Kan. 84, 490 P.2d 649; *Hill v. Fitzgerald* (1985), 304 Md. 689, 501 A.2d 27.) Although we are cognizant of several jurisdictions which have adopted the doctrine without legislative initiative (see *Comstock v. Collier* (Colo. 1987), 737 P.2d 845; *Bixler v. Bowman* (1980), 94 Wash. 2d 146, 614 P.2d 1290; *Tamminen v. Aetna Casualty & Surety Co.* (1982), 109 Wis. 2d 536, 327 N.W.2d 55; *Metzger v. Kalke* (Wyo. 1985), 709 P.2d 414), we decline to follow suit.

Notwithstanding our rejection of the continuous course of treatment doctrine, the Illinois statutory scheme does not necessarily preclude the cause of action asserted by plaintiff. Critical to the plaintiff's claim is the construction of the word "occurrence" in section

13–212. Plaintiff argues that, correctly construed, "occurrence" may include a continuing *negligent* course of treatment for a specific condition. We agree.

In interpreting a statute, the court's only role is to ascertain and give effect to the true intent and meaning of the legislature. (*People ex rel. Hanrahan v. White* (1972), 52 Ill. 2d 70, 73.) In determining the legislative intent, courts should consider first the statutory language.

In construing the meaning of the phrase "the act or omission or occurrence," we find it improbable that the General Assembly intended the word "occurrence" to be limited to a single event. Had it so intended, it could have simply stated that the statute begins to run on the happening of the "specific act" or "specific omission."

Further, to so narrowly construe this phrase could lead to absurd and unjust results. For example, if the word occurrence were interpreted to mean a single isolated event, patients who discovered that they were gravely injured due to negligent or unnecessary exposure to X-ray radiation or administration of medication over a span of years might be able to recover little, if any, in the way of damages. This would be so because a single dosage of radiation or medicine might be harmless, whereas treatment over time might be either disabling or even fatal. When the cumulative results of continued negligence are the cause of the injury, the statute of repose cannot start to run until the last date of negligent treatment. If the statute of repose were read to start on day one of the treatment in a span covering many years, a plaintiff could only seek recovery for the final four years. It is conceivable that the damage caused in the last four years might be either negligible or a small fraction of the harm caused over the continuum of negligence; thus, the recovery of damages would be neg-

ligible compared to the actual injury. Surely, the law could not contemplate such an unjust result.

While we reject adoption of the continuous course of treatment doctrine as being beyond the purview of the statute, we hold, however, given the circumstances such as those in this case, that a plaintiff is not barred by the statute of repose if she can demonstrate that there was an ongoing course of continuous *negligent* medical treatment. To prevail under this cause of action a plaintiff must demonstrate: (1) that there was a continuous and unbroken course of *negligent* treatment, and (2) that the treatment was so related as to constitute one continuing wrong.

We point out that once treatment by the negligent physician is discontinued, the statute of repose begins to run, regardless of whether or not the patient is aware of the negligence at termination of treatment. This is so because the statute of repose is triggered by the "act or omission or occurrence" causing an injury, rather than by the patient's discovery of the injury as is the case with a statute of limitations. (Ill. Rev. Stat. 1989, ch. 110, par. 13—212.) Although such a statutory scheme may result in harsh consequences, such as when a cause of action is barred even before its discovery, we reiterate that a "period of repose gives effect to a policy different from that advanced by a period of limitations; [the period of repose] is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge." (*Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 422.) Indeed, our legislature enacted this four-year outer limit on malpractice liability specifically to curtail the "long tail" exposure to medical malpractice claims brought about by the advent of the discovery rule. (*Anderson v. Wagner* (1979), 79 Ill. 2d 295, 311-12.) Thus, the statute of repose must be triggered once treatment terminates.

We also emphasize that there must be a continuous course of *negligent* treatment as opposed to a mere continuous course of treatment. In our reading of the statute, the word "occurrence," like the words "act" and "omission," necessarily only encompasses the continuum where the physician was negligent.

If the treating physician should discover his or her own negligence, it is that physician's duty to fully disclose the negligence and its ramifications. If the physician's treatments subsequent to discovery and disclosure cannot be deemed negligent, the statute of repose begins to run at the time of the physician's discovery and disclosure rather than at termination of treatment. Under this scenario, the two-year statute of limitations would run concurrently with the statute of repose. If the physician should purposely conceal the discovery of the negligence, however, neither the statute of limitations nor the statute of repose would be triggered. In the cases of nondisclosure, the fraudulent concealment provision in section 13—215 of the Code affords the patient five years after discovery of the cause of action to commence the suit. Ill. Rev. Stat. 1989, ch. 110, par. 13—215.

## CARLE CLINIC

We now turn to the issue of whether the tort of continuing negligent treatment applies to a multispecialty clinic when several doctors negligently treat a patient for a specific problem over a finite time span. We find that to the extent a party brings an action against the clinic as an entity in and of itself, rather than on a theory of vicarious liability, plaintiff can state a cause of action against a multispecialty clinic.

In this case, plaintiff sought care from Carle Clinic as an entity. Although it appears plaintiff had a right of preference as to the physician she wanted to see, the ultimate assignment decision was Carle's. It was merely

fortuitous that plaintiff was treated by more than one of Carle's physicians. Therefore, plaintiff now claims that not only is Carle vicariously liable for the negligent actions of its doctors, but that Carle Clinic, as an entity, negligently treated her condition.

It is clear that Carle could be held liable for plaintiff's injuries if she had been in the continuous care of a single physician associated with Carle. It would be inequitable to allow Carle to escape liability merely because it had the ability to assign different doctors to plaintiff over a period of time. Applying the continuous negligent treatment doctrine as discussed above to the current situation, we find that plaintiff should be allowed to assert a cause of action against Carle and should be allowed to amend her complaint accordingly.

## RES JUDICATA

Finally, Carle argues that the appellate court erred in failing to apply the doctrine of res judicata. Carle contends that its liability can only be based on a respondeat superior theory; thus, because plaintiff's action was dismissed as to Huffman, it should also have been dismissed as against Carle.

In light of the above discussion, Carle's initial premise is faulty. Plaintiff is suing Carle as an entity that provided negligent medical services for her specific condition, rather than as an employer with an errant employee. Thus, we find that res judicata does not bar an action against Carle as a health care provider even though her action against Huffman specifically is dismissed as being time-barred.

## CONCLUSION

In conclusion, we agree with the appellate court's finding that the trial court erred in dismissing counts I and II without leave to amend and in refusing to enter-

tain counts V and VI. In so ruling, however, we reject the continuous course of treatment doctrine as announced by the appellate court. Nonetheless, for the reasons expressed, we rule that when there is a continuous course of negligent treatment, the statute of repose does not begin to run until the last date of that negligent treatment.

Accordingly, the judgment of the appellate court is affirmed but its rationale is rejected.

*Affirmed.*

JUSTICE McMORROW took no part in the consideration or decision of this case.

CHIEF JUSTICE MILLER, dissenting:

I do not believe that it is necessary to determine here the status of the continuing course of treatment doctrine in Illinois. The case at bar must be resolved in the Clinic's favor on a separate ground, and thus we have no occasion to consider in the present appeal whether a health care provider's continuing treatment of a patient may serve to extend the time for bringing suit under the repose provision of section 13—212 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 13—212).

The plaintiff was last treated by Dr. Merrill Huffman in December 1983. The plaintiff next sought treatment at Carle Clinic in June 1986. She did not return to Dr. Huffman but chose instead to see a different physician, Dr. Dabrowski. In November 1988, the plaintiff sought treatment at the Carle emergency room, and the attending physician referred her to another Carle physician, Dr. Powell. The plaintiff filed the present action in March 1989. In counts I and II of the complaint, the plaintiff sought recovery from both Dr. Huffman and Carle Clinic Association. Count III was directed against Dr. Dabrowski and Carle Clinic, and count IV was di-

rected against Dr. Powell and Carle Clinic. The trial court dismissed counts I and II as time-barred. The court later denied the plaintiff's motions to amend her complaint by adding counts V and VI, directed against Carle Clinic and Drs. Huffman, Dabrowski, and Powell. The plaintiff voluntarily dismissed counts III and IV, and those claims are not involved in the present appeal.

In the appellate court, the plaintiff conceded that her claims against Dr. Huffman were barred by the four-year statute of repose, and the appellate court affirmed the dismissal of those portions of the plaintiff's complaint on the basis of counsel's concession. (223 Ill. App. 3d 878, 887, 889.) The plaintiff does not challenge that ruling in the present appeal. The sole issue before us concerns the Clinic's liability for acts occurring during the time of Dr. Huffman's treatment of the plaintiff.

In the present case, the majority declines to adopt the continuous course of treatment doctrine, believing that the doctrine is inconsistent with the limitations and repose periods provided by the legislature in section 13–212. Nonetheless, the majority adopts an allied theory, holding that a cause of action is not time-barred if a defendant is guilty of continuing acts of negligence and suit is brought within four years of the time of the last act complained of. The majority bases this result on a construction of the term "occurrence," as it is used in the repose provision of section 13–212. Although the majority refers to this theory as a cause of action (154 Ill. 2d at 406-07), I believe it is more properly considered a construction of the repose provision, not a separate theory of liability.

There may be some justification for this interpretation when a plaintiff's injury allegedly results from a continuing regimen of treatment, such as the administering of drugs or X rays; in those circumstances, tracing the onset of the injury to a particular act or specific mo-

ment can be difficult, if not impossible. (See, *e.g., Page v. United States* (D.C. Cir. 1984), 729 F.2d 818, 821-22; *Comstock v. Collier* (Colo. 1987), 737 P.2d 845, 848-49.) In cases of that nature, the "occurrence" complained of may be fairly characterized as a series of interrelated acts that involve a single course of treatment, are directed at the same condition, and produce injury by their cumulative effect.

Although this interpretation of the statute would postpone the start of the repose period, it need not suspend operation of the discovery rule. Thus, a plaintiff's actual or constructive knowledge that he has sustained a wrongfully caused injury (see *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 415; *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156) could be sufficient to trigger the two-year limitations period provided by section 13—212 of the Code of Civil Procedure. (See *Ewing v. Beck* (Del. 1987), 520 A.2d 653, 663-64.) Possessing that knowledge, a patient could then be required to commence the action in a timely manner, even while the negligent course of treatment was continuing.

It is not clear that the plaintiff would be able to make use of the interpretation of the repose statute I have outlined above, assuming there is no other bar to recovery. The gravamen of the plaintiff's complaint is the repeated failure by her doctors to correctly determine the cause of her condition. Unlike a continuing regimen of negligent treatment, the acts complained of in the present case more closely resemble discrete wrongs, and each failure to render a correct diagnosis could support a separate cause of action. In these circumstances, the justification for interpreting the term "occurrence" in the repose statute as embracing successive acts is greatly diminished.

There is, however, a more fundamental obstacle to the plaintiff's maintenance of the present action against

Carle Clinic. As provided by our Rule 273 (134 Ill. 2d R. 273), the involuntary dismissal of the plaintiff's claims against Dr. Huffman represents an adjudication on the merits, and the appellate court affirmed that portion of the circuit court judgment. The plaintiff has made no challenge to that determination in the present appeal. Accordingly, the plaintiff is now precluded, by principles of *res judicata*, from relitigating against Carle its vicarious liability for the acts of Dr. Huffman. As this court has explained:

> "The doctrine of *res judicata* provides that an adjudication upon the merits rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to subsequent action involving the same claim, demand, or cause of action. [Citation.] The doctrine has special applicability in suits against masters or servants. Thus, the rule has evolved that a judgment for either the master or servant, arising out of an action predicated upon the alleged negligence of the servant, bars a subsequent suit against the other for the same claim of negligence where the agency relationship is not in question." (*Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 122-23.)

In light of *Towns*, the plaintiff's claims against Carle Clinic for conduct occurring while she was Dr. Huffman's patient must fail unless she presents an exception to the rule in *Towns* regarding vicarious liability or, alternatively, a ground for finding the Clinic independently liable.

The majority agrees with the plaintiff that her claims against Carle Clinic are being brought against the Clinic "as an entity" and that the alleged negligence of the individual physicians involved in her treatment may serve to extend the time for bringing suit against the Clinic, under the rule adopted here. As proof of Carle Clinic's corporate liability, the majority asserts that the plaintiff sought treatment from the Clinic as a whole, rather than

from any individual member of its staff, and that the plaintiff had no choice in the selection of the individual physicians who treated her. (154 Ill. 2d at 408.) For these reasons, the majority concludes that the dismissal of the portion of the plaintiff's action against Dr. Huffman is no bar to the plaintiff's action against the Clinic for conduct occurring while she was Dr. Huffman's patient.

Contrary to the majority's view, however, there is no indication in the present case that the Clinic ever assigned the plaintiff to Dr. Huffman, or that the plaintiff did not control the selection of the physicians who treated her during the period of time relevant here. The pleadings and other documents on file point to the opposite conclusion, and demonstrate that the plaintiff's decision to discontinue seeing Dr. Huffman, and her choices of her subsequent treating physicians, do not warrant our disregarding the principle expressed in *Towns*, and do not supply a ground for establishing the Clinic's independent liability.

Indeed, virtually all the allegations against Carle Clinic, both in the original complaint and in counts V and VI, which the plaintiff later sought to file, charge the Clinic with vicarious, rather than independent, liability. To be sure, the one ground on which the Clinic, "as an entity," could be independently liable is the allegation, made in count VI, that the Clinic's system for maintaining patient records was inadequate. But even this allegation, if proved, would not render the Clinic liable for conduct occurring while the plaintiff was a patient of Dr. Huffman. The gravamen of this additional allegation is that physicians who later treated the plaintiff were not made aware of Dr. Huffman's failure to remove the intrauterine device. From the face of the complaint, however, it appears that the plaintiff's claims against Carle regarding her subsequent treatment by other Carle phy-

414

sicians would not have been barred by the four-year repose provision anyway, when the action was commenced.

The plaintiff has failed to demonstrate why *Towns* should not govern any claim against Carle Clinic for vicarious liability, and she has failed to present any ground on which the Clinic could be independently liable. The plaintiff's claims against Carle Clinic for conduct occurring while she was Dr. Huffman's patient must therefore be denied. Accordingly, we need not determine in the present appeal whether the continuous course of (negligent) treatment doctrine should be recognized in Illinois.