GWENDOLYN PORTWOOD *et al.*, Plaintiffs-Appellants, v. FORD MOTOR COMPANY, Defendant-Appellee.

First District (1st Division)   No. 1—96—1181

Opinion filed September 8, 1997.—Rehearing denied October 20, 1997.

Krislov & Associates, of Chicago (Clinton A. Krislov and Jonathan Nachsin, of counsel), and Moore & Brown, of Washington, D.C. (Beverly C. Moore, Jr., of counsel), for appellants.

Donohue, Brown, Mathewson & Smyth, of Chicago (John T. Coleman, Richard B. Foster III, and Karen Kies DeGrand, of counsel), and O'Melveny & Myers, L.L.P., of Washington, D.C. (William T. Coleman, Jr., Richard C. Warmer, Carl R. Schenker, Jr., and Patrick R. Rizzi, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

This appeal represents the latest chapter in a litigation odyssey, Homeric in both size and duration, that spans two decades. The most recent class action complaint sought relief for 52 named plaintiffs—owners of certain Ford automobiles—and all others similarly situated throughout the nation, against defendant Ford Motor Company for damages and injuries caused by certain allegedly defective vehicles it manufactured during the 1976-79 model years. Plaintiffs appeal the trial court's dismissal of the complaint as time-barred, and we affirm.

## BACKGROUND[1]

Plaintiffs have filed *five* proposed nationwide class actions related to these allegedly defective vehicles in four distinct jurisdictions.

---

[1]For purposes of our review, we state only those facts relevant to the present appeal. For a more exhaustive discussion of the facts and procedural history of the case, we direct the reader to this court's earlier opinion in *Doutt v. Ford Motor Co.*, 276 Ill. App. 3d 785, 659 N.E.2d 89 (1995) (*Doutt II*). That case was before the same trial court, and it presented virtually identical issues between the same parties on the same facts. Although filed later than the present action, *Doutt II* was quickly dismissed on the basis that it constituted duplicative litigation, a finding affirmed by this court on appeal.

Each action alleged that the vehicles would suddenly jump out of park—that is, shift from park to reverse—while left unattended. These "park to reverse" incidents resulted in the injuries and property damage for which plaintiffs have sought recovery. The proposed class actions are as follows: (1) *Walsh v. Ford Motor Co.*, No. 81—1998 (D.D.C., August 21, 1981); (2) *Thoubboron v. Ford Motor Co.*, No. 91—CA—01642 (D.C. Super. Ct., February 6, 1991); (3) *Doutt v. Ford Motor Co.*, No. 212 (Pa. C. P. Phila. Co., April 1, 1991) (*Doutt I*); (4) *Portwood v. Ford Motor Co.*, No. 91 CH 4442 (Ill. Cir. Ct. Cook Co., May 14, 1991), the present case before this court; and (5) *Doutt v. Ford Motor Co.*, No. 94 CH 3999 (Ill. Cir. Ct. Cook. Co., May 3, 1994) (*Doutt II*)[2].

The only previous action directly relevant to our disposition of this case is *Walsh v. Ford Motor Co.* On March 26, 1990—after nearly nine years of litigation—the United States District Court for the District of Columbia ultimately denied plaintiffs' motion for recertification as a class, due to the unmanageability of the case as a class action. *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 277 (D.D.C. 1990); see also *Walsh v. Ford Motor Co.*, 130 F.R.D. 514 (D.D.C. 1990) (denying plaintiffs' motion to reconsider). The court also dismissed the plaintiffs' individual claims, noting that said claims failed to satisfy the jurisdictional requirements of either the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.* (1981)) or federal diversity jurisdiction (28 U.S.C. § 1332 (1981)). *Walsh*, 130 F.R.D. at 277. Plaintiffs filed a motion to reconsider the dismissal of their individual claims, arguing that a multiparty action might be maintained under Magnuson-Moss and the joinder provision of Rule 20 of the Federal Rules of Civil Procedure. *Walsh v. Ford Motor Co.*, 130 F.R.D. 514 (D.D.C. 1990). The trial court disagreed and denied plaintiffs' motion on May 14, 1990. 130 F.R.D. at 516. In October 1991, the United States Court of Appeals for the D.C. Circuit dismissed plaintiffs' appeal on jurisdictional grounds. *Walsh v. Ford Motor Co.*, 945 F.2d 1188 (D.C. Cir. 1991).

Plaintiffs filed the present action, *Portwood v. Ford Motor Co.*, on May 14, 1991, precisely one year after their motion for reconsideration was denied in *Walsh*. The complaint named 52 plaintiffs—47 of whom had been named in the earlier *Walsh* case. Plaintiffs styled their complaint as a two-count action for breach of warranty. Early

---

[2]Apparently, plaintiffs filed *Doutt II* because the Pennsylvania action, *Doutt I*, had been stayed. Curiously, plaintiffs themselves requested the stay in the Pennsylvania action. *Doutt II*, 276 Ill. App. 3d at 790-91, 659 N.E.2d at 93.

on, the trial court stayed *Portwood* because of the pending actions in other jurisdictions, but that stay was reversed on a previous appeal to this court. *Portwood v. Ford Motor Co.*, 272 Ill. App. 3d 1115 (1995) (unpublished order under Supreme Court Rule 23). Eventually, plaintiffs voluntarily dismissed their complaints in the other jurisdictions, leaving Illinois as the sole forum in which their claims remained pending. Finally, on March 6, 1996, the trial court dismissed the *Portwood* complaint as time-barred.

When it dismissed the complaint, the trial court noted that both sides agreed that the applicable statute of limitations was found in section 2—725 of the Uniform Commercial Code—Sales (UCC) (Ill. Rev. Stat. 1991, ch. 26, par. 2—725 (now 810 ILCS 5/2—725 (West 1996))). That statute provides that any breach of warranty action must be brought within four years of the delivery of the goods at issue. The trial court, recognizing both that plaintiffs filed this suit in 1991 and that the vehicles in question were manufactured and sold in and around model years 1976-79, held that plaintiffs' breach of warranty action "[o]bviously" did not fall within the necessary four-year period and was therefore untimely. Plaintiffs argued (1) that the limitations period under section 2—725 was tolled, or suspended, from the date they filed *Walsh* (August 21, 1981) until the date the district court dismissed the case in 1990[3] (citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 76 L. Ed. 2d 628, 103 S. Ct. 2392 (1983)); and (2) that the limitations period was extended an additional year by operation of section 13—217 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 13—217 (now 735 ILCS 5/13—217 (West 1996))), the Illinois saving statute. Accordingly, plaintiffs' theory made their May 14, 1991, filing of *Portwood* a timely one. The trial court, however, rejected plaintiffs' arguments, and we affirm the trial court's decision.

## OPINION

The present appeal presents two issues before this court: (1) whether *American Pipe*'s tolling doctrine applies to toll the Illinois statute of limitations even where a class action is filed in a foreign jurisdiction, and (2) if tolling does not apply, then which saving provision best applies to plaintiffs' claims? We consider each issue in turn.

---

[3]As pointed out by the trial court, the parties dispute which day the 1990 dismissal became effective: defendant claims the effective dismissal date was March 29, 1990; plaintiffs assert May 14, 1990, as the effective date. The trial court found it unnecessary to resolve this dispute, and so do we.

I

■ The initial question we must decide is whether the class action tolling doctrine, as laid out in the United States Supreme Court's decision in *American Pipe* and expanded in *Crown, Cork & Seal*, applies to toll the limitations period in a jurisdiction different from the one in which the original class action is filed. *American Pipe* held that the filing of a federal class action tolls the statute of limitations as to all asserted members of a class who make timely motions to intervene after a court denies class certification. *American Pipe*, 414 U.S. at 553-54, 38 L. Ed. 2d at 726-27, 94 S. Ct. at 766. Later, the Court expanded this doctrine, ruling that a class action suspends the limitations period as to asserted members of the class whether they choose to intervene or file separate, individual actions following the denial of class certification. *Crown, Cork & Seal*, 462 U.S. at 354, 76 L. Ed. 2d at 636, 103 S. Ct. at 2397-98. Plaintiffs correctly point out that the Illinois Supreme Court adopted the *American Pipe* tolling doctrine for Illinois class actions, albeit without discussion. *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 342, 371 N.E.2d 634, 645 (1977), *rev'g in part* 41 Ill. App. 3d 804, 354 N.E.2d 586 (1976); see also *Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 255 Ill. App. 3d 790, 629 N.E.2d 520 (1993) (discussing *American Pipe, Crown, Cork & Seal*, and *Steinberg*). Defendant argues that neither the United States Supreme Court nor the Illinois Supreme Court has yet spoken on the issue of *cross-jurisdictional* tolling, and we agree. Both *American Pipe* and *Crown, Cork & Seal* dealt with cases in which the plaintiffs filed their class and individual claims in federal court and, as noted above, our supreme court in *Steinberg* adopted *American Pipe*'s tolling doctrine without discussion. Accordingly, we find this to be a case of first impression in Illinois.

When it considered the viability of plaintiffs' complaint, the trial court analyzed the class claims raised by the plaintiffs and each of the individual claims of the 52 named plaintiffs. In dismissing plaintiffs' class claims, the trial court relied upon the reasoning of *Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987), and *Robbin v. Fluor Corp.*, 835 F.2d 213 (9th Cir. 1987). These cases, among others, rejected the proposition that the tolling doctrines laid out in *American Pipe* and *Crown, Cork & Seal* should be extended to class members who file subsequent class actions. Although we agree with the trial court's interpretation of *Korwek* and *Robbin*, we need not decide this issue regarding plaintiffs' class claims. Because we hold that cross-jurisdictional tolling does not apply to save plaintiffs' individual claims, their class claims must also fail. *Landesman v. General Motors Corp.*, 72 Ill. 2d 44, 377 N.E.2d 813 (1978) (if the named

plaintiff has no individual cause of action, any attempted class action also fails).

■ In general, Illinois courts have resisted the notion that the commencement of suit tolls the relevant statute of limitations during the period that suit is pending. *Baird & Warner, Inc. v. Addison Industrial Park, Inc.*, 70 Ill. App. 3d 59, 75, 387 N.E.2d 831, 845 (1979). The Illinois saving statute expressly anticipates that a limitations period may expire during the pendency of a prior suit, as it allows for a plaintiff to refile "whether or not the time limitation for bringing such action expires during the pendency of such [prior] action." Ill. Rev. Stat. 1991, ch. 110, par. 13—217. We endorse the view adopted by the District of Columbia Court of Appeals in the related case of *Thoubboron v. Ford Motor Co.*, 624 A.2d 1210 (D.C. 1993), in which many of the same plaintiffs filed a near-identical complaint against the same defendant. That court stated its unwillingness to establish—"by judicial *fiat*"—a tolling exception that emasculated the legislatively enacted statute of limitations. *Thoubboron*, 624 A.2d at 1213, citing *Bond v. Serano*, 566 A.2d 47 (D.C. 1989). Although our supreme court adopted the tolling doctrine of *American Pipe* in *Steinberg*, we decline to further extend that doctrine to the case at hand. We hold, therefore, that a class action filed in a foreign judicial system does not operate to toll the duly enacted limitations period in Illinois.

We believe our decision today best serves the interests of a just and efficient legal system in Illinois. As defendant points out in its brief, the *Portwood* complaint alleges that fraudulent concealment on defendant's part tolled the UCC's four-year limitations period until August 1981, when plaintiffs filed the *Walsh* action. If *American Pipe* here applied as plaintiffs argue, the doctrine would have tolled the limitations period throughout the entire life of the *Walsh* action; thus, *Portwood* would have been timely up to four years after *Walsh*'s dismissal (that is, until May 1994)—some 15 years after defendant delivered the last of the allegedly defective vehicles. This theory would establish the Illinois judiciary as a clearinghouse for stale class actions from any of the 50 states, wherein classes that died in other jurisdictions might breathe again in Illinois courts and at Illinois' expense. We cannot read *Steinberg* as mandating this court to ignore the legislature's manifest intent to set the statute of limitations for warranty actions at four years.

Moreover, we are not persuaded by the authorities plaintiffs cite in favor of cross-jurisdictional tolling. In *Ganousis v. E.I. duPont de Nemours & Co.*, 803 F. Supp. 149 (N.D. Ill. 1992), the district court explicitly declined to rule on whether cross-jurisdictional tolling ap-

plied, "because even giving plaintiffs the benefit of the *American Pipe-Crown, Cork & Seal* rule, they lose." 803 F. Supp. at 155 (plaintiffs were members of an original class action in Minnesota, but filed subsequent individual actions in federal court under Illinois law). In *Lee v. Grand Rapids Board of Education,* 148 Mich. App. 364, 384 N.W.2d 165 (1986), the court held that a federal district court action tolled the statute of limitations in a subsequently filed state action. 148 Mich. App. at 369-70, 384 N.W.2d at 168. However, the Michigan court relied upon a previous ruling in which it interpreted Michigan's tolling statute (*Ralph Schrader, Inc. v. Ecclestone Chemical Co.,* 22 Mich. App. 213, 177 N.W.2d 241 (1970) (interpreting predecessor to Mich. Comp. Laws Ann. § 600.5856 (West 1987)); Illinois law contains no such tolling statute. As for the other cases cited by plaintiffs, we find them to be either factually inapposite or nonbinding upon this court.

## II

■ Because we hold that cross-jurisdictional tolling does not apply here, we must now determine which of two conflicting saving provisions best applies to plaintiffs' claims—the one contained in the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 13—217)[4] or that provision included in the Uniform Commercial Code section setting out the statute of limitations in contracts of sale (Ill. Rev. Stat.

---

[4]At the time this action was filed, section 13—217 (Ill. Rev. Stat. 1991, ch. 110, par. 13—217) provided:

"Reversal or dismissal. In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if judgment is entered for the plaintiff but reversed on appeal, or if there is a verdict in favor of the plaintiff and, upon a motion in arrest of judgment, the judgment is entered against the plaintiff, or the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for lack of jurisdiction, then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, his or her heirs, executors or administrators *may commence a new action within one year or within the remaining period of limitation,* whichever is greater, after such judgment is reversed or entered against the plaintiff, or after the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for lack of jurisdiction." (Emphasis added.)

1991, ch. 26, par. 2—725(3))[5]. Since no cross-jurisdictional tolling operated to suspend the running of the four-year statute of limitations, plaintiffs' action remains viable only if they filed their *Portwood* complaint within the time period allotted by the applicable saving provision. If the six-month provision of section 2—725(3) of the UCC applies, plaintiffs' claims are time-barred; if the one-year provision of section 13—217 of the Code of Civil Procedure applies, then plaintiffs' claims may not be time-barred. Because we find the saving provision of the UCC to be the *more* applicable provision, we hold that the trial court properly found plaintiffs' claims to be time-barred.

Section 2—725(3) governs plaintiffs' cause of action because that section specifically deals with warranty actions upon contracts for sale. " '[W]here there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail.' " *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195, 595 N.E.2d 561, 563 (1992), quoting *Bowes v. City of Chicago*, 3 Ill. 2d 175, 205, 120 N.E.2d 15, 31 (1954); see also *In re Lifschultz Fast Freight Corp.*, 63 F.3d 621, 629 (7th Cir. 1995) (when forced to choose between specific statutory provisions and a general savings clause, a court should err on the side of the specific provision). We premise our conclusion that section 2—725(3) is the more specific provision upon our view of the legislature's intent in passing both sections 2—725(3) and 13—217.

As the Illinois Supreme Court has stated on several occasions, " '[t]he cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature.' " *Hernon*, 149 Ill. 2d at 194, 595 N.E.2d at 562, quoting *People v. Boykin*, 94 Ill. 2d 138, 141, 445 N.E.2d 1174, 1175 (1983); *Cunningham v. Huffman*, 154 Ill.

---

[5]Section 2—725 (Ill. Rev. Stat. 1991, ch. 26, par. 2—725) provided in part:
"(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
\*\*\*
(3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and *within 6 months after the termination of the first action* unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute." (Emphasis added.)

2d 398, 609 N.E.2d 321 (1993). The first step in determining legislative intent requires a court to examine the statutory language. *Hernon*, 149 Ill. 2d at 194, 595 N.E.2d at 562; *Cunningham*, 154 Ill. 2d at 405, 609 N.E.2d at 325. Section 13—217 (the one-year saving provision) applies to all "actions specified in Article XIII of [the Code of Civil Procedure] or *any other act* or contract where the time for commencing an action is limited." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 110, par. 13—217. Thus, the plain language of section 13—217 indicates that it is a general, catch-all saving provision; it applies to real estate actions, personal injury actions, or "any other" action that might be subject to a limitations period. Indeed, it would apply to warranty actions in the absence of a more specific provision. The one-year saving period of section 13—217 applies where, as here, an action is dismissed by a United States District Court for lack of jurisdiction. However, section 13—217 also applies in *any* of the following instances: (1) a judgment in a plaintiff's favor is reversed on appeal; (2) a verdict is in a plaintiff's favor but, upon motion in arrest of judgment, judgment is entered against plaintiff; (3) an action is voluntarily dismissed by the plaintiff; or (4) an action is dismissed for want of prosecution.[6] Ill. Rev. Stat. 1991, ch. 110, par. 13—217.

In contrast, subparagraph (3) of section 2—725 (the six-month saving provision) specifically limits its application only to those actions authorized by subparagraph (1) of that section—actions for breach of a contract of sale (including actions for breach of warranty). Ill. Rev. Stat. 1991, ch. 26, par. 2—725(3). Moreover, the six-month saving provision itself is limited: it applies where an action "is so terminated as to leave available a remedy by another action for the same breach *** unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute." Ill. Rev. Stat. 1991, ch. 26, par. 2—725(3). It appears, then, that section 2—725 not only applies to a narrower subject area than section 13—217, but it also applies in even fewer circumstances within that subject area.

Our reading of section 2—725(3) gives effect to the purpose of this provision of the Uniform Commercial Code. As indicated by the official comment to UCC section 2—725, the provision was designed "[t]o introduce a uniform statute of limitations for sales contracts,

---

[6]Since this case was filed, section 13—217 has been amended twice by the legislature. While the provision no longer applies to voluntary dismissals and dismissals for want of prosecution (Pub. Act 89—7, eff. March 9, 1995), it does now apply to dismissals from federal court for improper venue (Pub. Act. 87—1252, § 2, eff. January 7, 1993).

thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale." 810 ILCS Ann. 5/2—725, Uniform Commercial Code Comment (1993). If we hold that the one-year saving statute of the Code of Civil Procedure trumps the six-month saving provision of UCC section 2—725, then we resurrect the uncertainty and jurisdictional vagaries that the UCC eliminated by tolerating different grace periods under each jurisdiction's saving statute.

We also reject plaintiffs' argument that section 13—217 constitutes a "*specific* exception to the *broader* provision of UCC § 2—725(3)" (emphasis in original). Initially, we note that the language of the statute does not support plaintiffs' interpretation. Furthermore, the proposed "specific exception" engulfs the rule. As noted above, section 13—217 would apply in this case in the absence of a more specific provision. Should this court hold that section 13—217 applies to this case despite the existence of a narrower provision, we would render that narrower provision absurd, pointless and void. In Illinois, it is a well-established rule of statutory construction that courts shall avoid any construction that renders a statute meaningless or void. *Hernon*, 149 Ill. 2d at 195, citing *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 362-63 (1986), *People v. Tarlton*, 91 Ill. 2d 1 (1982), and *People v. Lutz*, 73 Ill. 2d 204 (1978). Because we presume the legislature did not intend to adopt a meaningless provision, we cannot accept plaintiffs' position.

Plaintiffs point out that the General Assembly amended section 13—217 to include dismissals from a United States District Court for lack of jurisdiction in 1980, long after it adopted the UCC in the early 1960s; consequently, plaintiffs argue, section 13—217 should control over UCC section 2—725(3). This argument fails to recognize another fundamental axiom of statutory construction: "a more specific statute will be given precedence over a more general one, regardless of their temporal sequence." *United States v. Olinger*, 759 F.2d 1293, 1299 (7th Cir. 1985), citing *Prieser v. Rodriguez*, 411 U.S. 475, 489-90, 36 L. Ed. 2d 439, 450, 93 S. Ct. 1827, 1836-37 (1973), *rev'g Rodriguez v. McGinnis*, 456 F.2d 79 (2d Cir. 1972).

Finally, plaintiffs' interpretation of section 13—217 facilitates forum shopping, a result that the legislature could not have intended. This epic litigation has crept ever westward in the hope of finding a hospitable forum. The history of this case indicates that plaintiffs have filed two virtually identical complaints (*Thoubboron* and *Doutt I*) in two other jurisdictions *prior* to the filing of their complaint in this matter; then, subsequent to the *Portwood* complaint, plaintiffs filed yet another complaint in this jurisdiction (*Doutt II*). In *Doutt II*,

plaintiffs' counsel admitted that he expected the Pennsylvania court to find *Doutt I* time-barred; as a result, plaintiffs sought to litigate in Illinois. *Doutt v. Ford Motor Company*, 276 Ill. App. 3d 785, 790, 659 N.E.2d 89, 93 (1995) (*Doutt II*). The trial court described plaintiffs' tactics as an obvious case of forum shopping. *Doutt II*, 276 Ill. App. 3d at 790, 659 N.E.2d at 93. We agree with that characterization. Section 13—217 should not be used as a tool to circumvent the statute of limitations, as that result would frustrate the legislature's intent in establishing a limitations period. *White v. Tucker*, 53 Ill. App. 3d 862, 867, 369 N.E.2d 90, 94 (1977) (interpreting section 24 (Ill. Rev. Stat. 1975, ch. 83, par. 24a), the predecessor to section 13—217); see also *Kahle v. John Deere Co.*, 104 Ill. 2d 302, 310-11, 472 N.E.2d 787, 791 (1984) (Ryan, J., concurring) (section 13—217 "should not be abused by using the statute as a means of forum shopping").

The cases plaintiffs cite in support of their position are distinguishable from the facts of this case, in that those cases did not require a court to choose between two applicable saving provisions. In *Roth v. Northern Assurance Co.*, 32 Ill. 2d 40, 203 N.E.2d 415 (1964), *rev'g* 46 Ill. App. 2d 253, 196 N.E.2d 389 (1964), our supreme court held that the former Illinois saving statute (section 24) extended a contractual limitations period contained in an insurance policy. Plaintiffs also rely upon *Limer v. Lyman*, 241 Ill. App. 3d 125, 608 N.E.2d 918 (1993), which dealt with a conflict between section 13—217 and the medical malpractice statute of repose (Ill. Rev. Stat. 1991, ch. 110, par. 13—212). The court noted that nothing in the medical malpractice statute of repose indicated a legislative intent to avoid the remedial provision of section 13—217 (*Limer*, 241 Ill. App. 3d at 128, 608 N.E.2d at 920); in contrast, the very fact that section 2—725 of the UCC includes its own saving provision demonstrates a legislative intent to alter the effect of the Code of Civil Procedure's general saving statute, section 13—217, at least with respect to actions on a contract of sale. Finally, plaintiffs mischaracterize *Bethlehem Steel Corp. v. Chicago Eastern Corp.*, 863 F.2d 508 (7th Cir. 1988), asserting that that court found a section of the Code of Civil Procedure[7] to constitute a specific exception to the broader UCC section 2—725(3). In fact, *Bethlehem Steel* never even mentioned section 2—725(3); instead, the seventh circuit held that Chicago Eastern's counterclaims were governed by the counterclaim provision of the Code rather than the

---

[7]Section 13—207 (Ill. Rev. Stat. 1991, ch. 110, par. 13—207 (now 735 ILCS 5/13—207 (West 1996))), setting forth the limitations period for filing defense counterclaims.

four-year limitations period of the UCC. 863 F.2d at 511-12. Accordingly, we find that plaintiffs' authorities do not support their construction of section 13—217.

## CONCLUSION

Our decision today may have negative ramifications with respect to unnamed plaintiffs in a class action, as such plaintiffs may experience more difficulty in having the merits of their claims heard. However, our decision does not foreclose a hearing on the merits for such plaintiffs. In a worst-case scenario, an unnamed plaintiff in a federal class action may see his or her state claims time-barred as a result of our rejection of cross-jurisdictional tolling. Yet, even if this occurs, and that plaintiff's federal class is denied certification, under *American Pipe* the plaintiff may still pursue his claim in federal court. Furthermore, should that plaintiff's federal claim be dismissed for lack of jurisdiction, he or she may still take advantage of the *proper* saving provision and file the claim in Illinois.

In the instant case, the trial court properly found that the *American Pipe* tolling doctrine did not apply to toll the statute of limitations on plaintiffs' class claims under Illinois law. For the reasons given in part I above, we affirm this part of the trial court's order. Furthermore, although plaintiffs themselves acknowledged that the four-year statute of limitations of UCC section 2—725 applied to their action—and hence should have known that the six-month saving provision of section 2—725(3) might also apply—they chose to wait an entire year before filing their complaint in Illinois. The trial court concluded that section 2—725(3), as the more specific saving provision, applied to bar plaintiffs' claims. For the reasons given in part II above, we agree. As such, we affirm the March 6, 1996, order of the trial court.

Affirmed.

TULLY, P.J., and CERDA, J., concur.