**Eileen THOUBBORON,
et al., Appellants,**

v.

**FORD MOTOR COMPANY, Appellee.**

**No. 00–CV–1482.**

District of Columbia Court of Appeals.

Argued Nov. 7, 2001.
Decided Nov. 7, 2002.

Beverly C. Moore, Jr., with whom John W. Pillette, Washington, DC, was on the brief, for appellants.

Carl R. Schenker, Jr., with whom William T. Coleman, Jr., Washington, DC, Richard C. Warmer, San Francisco, CA, and Patrick R. Rizzi, Washington, DC, were on the brief, for appellee.

Before STEADMAN and WASHINGTON, Associate Judges, and FERREN, Senior Judge.

WASHINGTON, Associate Judge:

Appellants, thirty-four named class members, their attorney Beverly C. Moore, Jr. and his law firm Moore & Brown ("appellants") appear before this court in their third appeal, arising from a proposed class action against appellee Ford Motor Company ("Ford") involving breach of warranty claims. In their present appeal, appellants challenge a trial court order denying their May 2000 motion to dismiss with prejudice and to vacate the trial court's 1994 voluntary dismissal order. The 1994 order included an award of attorney's fees and costs as a term and condition of the dismissal without prejudice previously sought by appellants. Judge Steffen W. Graae denied the motion to dismiss with prejudice on two grounds: (1) that appellants were untimely in their decision to opt for a dismissal with prejudice in 2000 in lieu of complying with the terms and conditions of the 1994 order conferring a dismissal without prejudice, and (2) that appellants were precluded under the doctrine of equitable estoppel from contradicting their representations to two other jurisdictions that they intended to pay Ford's attorney's fees and costs when quantified. We affirm.

I.

The class action litigation at issue here was filed in this jurisdiction in 1991, the second of four proposed nationwide class action lawsuits filed against Ford for breach of written and implied warranties based on allegations of faulty transmissions, in particular Ford model cars manufactured between 1976 and 1979. Prior to the District of Columbia (D.C.) Superior Court suit, appellants filed a federal suit in August 1981, which was subsequently dismissed on appeal ten years later on jurisdictional grounds when the only named appellant settled with Ford. *Walsh v. Ford Motor Co.*, 292 U.S.App. D.C. 32, 945 F.2d 1188 (1991). In February 1991, while the *Walsh* appeal was pending, and under the

mistaken belief that the filing of the federal suit had tolled the statute of limitations, appellants filed a class action suit against Ford in the D.C. Superior Court on behalf of Eileen Thoubborron and thirty-three other owners of Ford vehicles, all of whom were also plaintiffs in the federal suit.

When Ford filed a motion to dismiss the *Thoubboron* complaint as time-barred in March 1991, appellants responded with a motion under Super. Ct. Civ. R. 41(a)(2) to dismiss their claims without prejudice in order to pursue their claims in other jurisdictions. While this motion was pending, appellants filed a similar proposed nationwide class action in Pennsylvania on behalf of the thirty-four *Thoubboron* plaintiffs in addition to Raymond B. Doutt. *Doutt v. Ford Motor Co.*, No. 212 (Pa. Ct. Common Pleas Philadelphia Co., Apr. 1, 1991). The fourth suit was filed in Illinois on behalf of eighteen of the *Thoubboron* plaintiffs in addition to others. *Portwood v. Ford Motor Co.*, No. 91 CH 4442 (Ill. Cir. Ct. Cook Co., May 14, 1991). The Pennsylvania and Illinois courts stayed the proposed class action proceedings in 1991 and 1992, respectively, while awaiting the resolution of the *Thoubboron* case.

In September 1991, Judge Richard A. Levie dismissed *Thoubboron* with prejudice because appellants' claims were time-barred under District of Columbia law. Appellants appealed, requesting that this court instead direct the trial court to dismiss the claims without prejudice pursuant to Rule 41(a)(2) in order to avoid the potential res judicata effect on appellants' suits then pending in Pennsylvania and Illinois. Noting that a dismissal with prejudice is a "drastic remedy and should be granted sparingly," we vacated the trial court's decision and remanded with instructions that the trial court provide an explanation as to the basis for dismissing the claims with prejudice "[i]n order to

facilitate judicial review and to ensure that the trial court's discretion has been judiciously exercised." *Thoubboron v. Ford Motor Co.*, 624 A.2d 1210, 1214 (D.C.1993) (*Thoubboron I*). We also indicated that should the trial court decide in favor of a dismissal without prejudice, terms and conditions could be imposed so as to "compensate the defendant for its costs and counsel fees incurred in defending against what has turned out to be the plaintiffs' improvident foray into the courts of this jurisdiction." *Id.* at 1216 n. 12. In addition, we noted that appellants "readily acknowledge that the request that their individual claims be voluntarily dismissed, rather than dismissed with prejudice, was made solely in order to protect their complaints in Pennsylvania and Illinois." *Id.* at 1215.

In a January 1994 order, Judge Levie granted appellants a voluntary dismissal without prejudice conditioned upon their paying Ford's attorney's fees and costs incurred involving work product which would not be useful in related, subsequent litigation between the parties, and indicated that the voluntary dismissal was granted "subject to Plaintiffs' compliance with the above listed conditions." He also ordered that Ford submit affidavits and other supporting documents itemizing attorney's fees and costs to the trial court by February 7, 1994 for quantification of the appropriate amount due to Ford. Appellants were instructed to file a response to Ford's submission by February 22, 1994. In its February 7, 1994 submission, Ford sought attorney's fees in the amount of $84,790 and costs in the amount of $3,459.06, for a total of $88,228.06. On March 7, 1994, appellants filed a forty-page opposition to Ford's request on several grounds—excessiveness in terms of the attorney time billed, that substantial portions of the work product could be reused in *Portwood* and *Doutt,* lack of

specificity in terms of the attorney time billed, lack of supporting documentation, and excessive costs—and argued that Ford's request for attorney fees should be reduced to $16,291.[1]

Following the issuance of Judge Levie's 1994 order, Moore argued to the Pennsylvania and Illinois courts that the stays of those proceedings should be removed because appellants had obtained a voluntary dismissal in *Thoubboron* and intended to pay Ford's attorney's fees and costs as soon as the amount was quantified. Ford requested that the Pennsylvania court maintain the *Doutt* stay until appellants had actually met their obligation to pay the *Thoubboron* attorney's fees and costs. In a March 1994 pleading, Moore represented to the Pennsylvania court that the stay on the *Doutt* proceeding should be lifted immediately as opposed to when the payments were actually made since appellants fully intended to pay Ford the amount awarded:

> Plaintiffs ... advised Ford that they will, of course, pay whatever attorney fees and costs the *Thoubboron* court eventually awards, but that amount has not yet been determined and therefore cannot be paid now. Plaintiffs further advised that the residual fee issue which is entirely collateral to the merits of this litigation provides no basis for continuing the Stay (or the Illinois Stay in the *Portwood* case ...), even though technically *Thoubboron* remains "pending" for as long as the fee issue is outstanding.[2]

The stay of *Doutt* was ultimately lifted and, in May 1995, Moore obtained a voluntary dismissal without prejudice from the Pennsylvania court in order to pursue the litigation in Illinois.

In May 1992, the Illinois court originally granted Ford's request to stay the *Portwood* action pending the outcome of *Thoubboron* and *Doutt*. Appellants appealed the stay. In April 1994, following the voluntary dismissals in *Thoubboron* in the District of Columbia and *Doutt* in Pennsylvania, Moore represented to the Illinois appellate court that "these new developments moot the basis for the stay" in *Portwood* because

> the *Thoubboron* trial court on remand dismissed the *Thoubboron* claims *without prejudice*, on condition that plaintiffs pay Ford certain attorney fees and costs, which plaintiffs will do as soon as the amount, which is presently being litigated, is finally determined. A copy of that Order is attached hereto as Exhibit A.[3]

The *Portwood* stay was subsequently removed in 1995, and the litigation proceeded in Illinois. In March 1996, the Illinois trial court dismissed *Portwood* as time-barred and its decision was affirmed on appeal by the Illinois Court of Appeals, *Portwood v. Ford Motor Co.*, 292 Ill. App.3d 478, 226 Ill.Dec. 486, 685 N.E.2d 941 (1997), which was in turn affirmed by the Supreme Court of Illinois. *Portwood v. Ford Motor Co.*, 183 Ill.2d 459, 233 Ill.Dec. 828, 701 N.E.2d 1102 (1998).

Four years after Judge Levie entered his original order granting appellants' motion for voluntary dismissal without preju-

---

**1.** *Plaintiffs' Opposition to Ford's Request for Attorney Fees and Costs,* filed March 7, 1994.

**2.** *Statement of Points and Authorities in Support of Plaintiffs' Motion to Modify and Continue Stay or, Alternatively, to Voluntarily Discontinue Claims of All Plaintiffs Except Doutt without Prejudice,* filed March 30, 1994. In a

footnote to that pleading, appellants indicated that the document also reflects *Plaintiffs' Opposition to Ford's Motion to Terminate Stay,* filed February 28, 1994.

**3.** *Appellants' Second Motion to Supplement Record,* filed April 6, 1994.

dice and conditioning it on appellants' payment of Ford's attorney's fees and costs, he quantified the amount due to Ford in a July 1998 order, ruling that appellants were jointly and severally liable to Ford for $62,669.16 in attorney's fees and costs,[4] less the $5,000 already paid by appellants.[5] In August 1998, appellants filed a motion to alter and amend judgment pursuant to Super. Ct. Civ. R. 59(a)(2) and 59(e) with respect to the 1998 order or, alternatively, for a new trial with respect to that order. Appellants also moved under Rule 60(b)(2) to set aside the 1998 order on the basis of new evidence that Ford reused most of the *Thoubboron* work product in its *Portwood* briefs. In addition, appellants asserted that if the Illinois Supreme Court affirmed the dismissal of Portwood, "plaintiffs will have the option to simply decline to pay Ford any fees and will consent to having these *Thoubboron* claims dismissed with prejudice."

In September 1998, Judge Levie denied appellants' motion to alter and amend judgment. On appeal, this court upheld that ruling, noting that when the trial court granted appellants' motion to dismiss without prejudice, the order was expressly conditioned upon appellants paying Ford's attorney's fees and costs. *Thoubboron v. Ford Motor Co.*, 749 A.2d 745, 747 (D.C. 2000) (*Thoubboron II*). We also concluded that the trial court's assessment of attorney's fees and costs was reasonable, "especially considering that the court reduced the total amount that Ford sought by almost 30 percent." Id. With respect to appellants' argument that the voluntary dis-

missal issue could become moot in light of the Illinois Supreme Court's decision in *Portwood,* we indicated that "[w]hile it is possible that the present litigation may become moot at some time in the future as a result (at least in part) of the Illinois ruling, it is not moot yet. We conclude that any suggestion of mootness is at best premature." *Id.*

Less than one month following our ruling in *Thoubboron II,* appellants next filed the instant motion to dismiss their claims with prejudice and vacate the voluntary dismissal order conditioned upon payment of Ford's fees and expenses. Appellants argued that the previously obtained voluntary dismissal without prejudice was rendered "worthless" and thus "moot" since they were now precluded from refiling the proposed class action in any other jurisdiction as a result of the 1998 Illinois Supreme Court ruling dismissing *Portwood* as time-barred. Judge Graae rejected appellants' mootness argument in his July 2000 order, denying their motion on two grounds. First, Judge Graae ruled that the time for opting for a dismissal with prejudice rather than complying with the terms and conditions of the voluntary dismissal had passed:

> The instant case is distinguishable in its procedural history from those cases suggesting that a plaintiff may elect to suffer dismissal with prejudice rather than comply with a condition of payment of the defendant's attorneys' fees. Here Plaintiffs reaped the benefit of the dismissal without prejudice by bringing two other lawsuits. In doing so, the proper

**4.** The trial court determined that certain of appellants' challenges to Ford's submissions concerning attorney's fees and costs were meritorious because several of the itemizations lacked specificity. As a consequence, the trial court reduced the amount due to Ford from the initial request for $88,228.06 to $62,669.16.

**5.** According to an April 1997 letter from Ford's counsel to Judge Levie, Moore made a $5,000 payment in December 1996 "to be applied toward satisfaction of the Court's ultimate order on Ford's application."

time for election was bypassed. The fact that the results of the lawsuits were not to Plaintiffs' liking does not restore their right to elect a dismissal with prejudice.

Second, he ruled that appellants should not be allowed to avoid their obligation to pay Ford's attorney's fees and costs on equitable estoppel grounds, concluding that Ford "relied on Plaintiffs' representations in Pennsylvania and Illinois by not moving to dismiss them, and now stand to be injured by Plaintiffs' failure to compensate them for their attorneys' fees and costs."

## II.

On appeal, appellants argue that the trial court abused its discretion by denying the motion to dismiss their claims with prejudice and to vacate the 1994 voluntary dismissal order conditioned on the payment of Ford's attorney's fees and costs. Appellants maintain that they have a right to elect a dismissal with prejudice in lieu of paying Ford since a voluntary dismissal without prejudice is "worthless" to them now that they are precluded from filing the class action in any other jurisdiction after the dismissal of *Portwood*. Ford responds that appellants benefitted from the voluntary dismissal order when issued in 1994 because that ruling allowed appellants to proceed with cases in Pennsylvania and Illinois that had been stayed in 1991 and 1992, respectively, pending the resolution of *Thoubboron*. With respect to the equitable estoppel argument, Ford maintains that Judge Levie would not have granted a dismissal without prejudice if appellants had rejected the express condition to pay Ford's attorney's fees and

costs, and that the Pennsylvania and Illinois courts would not have lifted the stays in those jurisdictions but for appellants' assurances that they intended to meet the conditions.

### A. Rule 41(a)(2)

■ Rule 41(a)(2) permits a plaintiff, with court approval, to voluntarily dismiss an action. Super. Ct. Civ. R. 41(a)(2); *Washington Metro. Area Transit Auth. v. Reid*, 666 A.2d 41, 45 (D.C.1995). The rule provides that "an action shall not be dismissed at the plaintiff's instance save upon order of the Court and upon such terms and conditions as the Court deems proper." Super. Ct. Civ. R. 41(a)(2). In addition, the rule provides that "[u]nless otherwise specified in the order, a dismissal under this paragraph is without prejudice." *Id.*[6] While a voluntary dismissal *with* prejudice constitutes a complete adjudication of the matter and precludes further action between the parties based on the principle of *res judicata, Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001), a dismissal without prejudice "render[s] the proceedings a nullity and leave[s] the parties as if the action had never been brought." *Bonneville Assocs. Ltd. v. Barram*, 165 F.3d 1360, 1364 (Fed. Cir.1999) (citations omitted). Thus, a dismissal without prejudice has no *res judicata* effect. *McCall–Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir.1985).

■ The trial court has the discretion under Rule 41(a)(2) to condition a voluntary dismissal without prejudice "upon such terms and conditions as the Court

---

**6.** We have held that Super. Ct. Civ. R. 41 is substantially identical to the corresponding federal rule, Fed.R.Civ.P. 41 and, thus, we "constru[e] the local rule in light of federal cases interpreting the federal rule." *Clay v. Faison,* 583 A.2d 1388, 1391 n. 5 (D.C.1990); accord, *Launay v. Launay, Inc.,* 497 A.2d 443, 450 n. 7 (D.C.1985); *Bazata v. National Ins. Co.,* 400 A.2d 313, 314 n. 1 (D.C.1979). However, this court is not bound by federal court interpretations. *Bazata, supra,* 400 A.2d at 314 n. 1.

deems proper." Super. Ct. Civ. R. 41(a)(2). The purpose of the "terms and conditions" clause is "to protect a defendant from any prejudice or inconvenience that may result from a plaintiff's voluntary dismissal." *Taragan v. Eli Lilly & Co.,* 267 U.S.App. D.C. 387, 390, 838 F.2d 1337, 1340 (1988) (citing *GAF Corp. v. Transamerica Ins. Co.,* 214 U.S.App. D.C. 208, 211, 665 F.2d 364, 367 (1981)); *accord, Fisher v. Puerto Rico Marine Mgmt., Inc.,* 940 F.2d 1502, 1503 (11th Cir.1991); *McCants v. Ford Motor Co.,* 781 F.2d 855, 856 (11th Cir.1986). Generally, courts condition the voluntary dismissal on the requirement that the plaintiff pay defendant's attorney's fees and costs in order "to compensate the defendant for the unnecessary expense that the litigation has caused" because "the defendant may have to defend again at a later time and incur duplicative legal expenses."[7] *Cauley v. Wilson,* 754 F.2d 769, 772 (7th Cir.1985); *accord, Taragan, supra,* 267 U.S.App. D.C. at 390, 838 F.2d at 1340 (citing *GAF Corp., supra,* 214 U.S.App. D.C. at 211, 665 F.2d at 367). Thus, conditioning a voluntary dismissal on the payment of defendant's legal fees and costs is envisioned as a means to protect the defendant's interests. *See Taragan, supra,* 267 U.S.App. D.C. at 390, 838 F.2d at 1340 ("The purpose of the 'terms and conditions' clause [of Rule 41(a)(2)] is to protect a defendant from any prejudice or inconvenience that may result from a plaintiff's voluntary dismissal"). *Cf. Cauley, supra,* 754 F.2d at 772 ("Fees are not awarded when a plaintiff obtains a dismissal *with prejudice* because the defendant cannot be made to defend again") (citations and internal quotation marks omitted) (emphasis in the original). Attorney's fees and costs are limited to the amount expended for work that cannot be applied to the subsequent lawsuit concerning the same claims, and this amount "must be supported by evidence in the record." *Taragan, supra,* 267 U.S.App. D.C. at 390, 838 F.2d at 1340; *accord, Cauley, supra,* 754 F.2d at 772. The requirement that such fees and costs be paid has been referred to as a "precondition to appellants' refiling their complaint." *Herring v. Whitehall,* 804 F.2d 464, 466 (8th Cir.1986); *see also Lau v. Glendora Unified School Dist.,* 792 F.2d 929, 930 (9th Cir.1986) (The language of Rule 41(a)(2) indicates that the dismissal of the action is contingent *both* "upon order of the court" *and* "upon such terms and conditions as the court deems proper") (emphasis in the original).[8]

■ A plaintiff facing terms and conditions has several alternatives. The plaintiff may accept the voluntary dismissal without prejudice and concomitant conditions, which confers upon defendants "an enforceable judgment which they can execute." *Yoffe v. Keller Indus.,* 582 F.2d 982, 983 (5th Cir.1978); *see also McCall–Bey, supra,* 777 F.2d at 1183 (recognizing that jurisdiction could be retained to enforce the terms or conditions if and when

---

7. Indeed, the Eighth Circuit has held that a court's failure to condition a voluntary dismissal upon the plaintiff's payment of attorney's fees and costs may constitute an abuse of discretion. *Belle–Midwest, Inc. v. Missouri Prop. & Cas. Ins. Guar. Assoc.,* 56 F.3d 977, 978 (8th Cir.1995); *see also Davis v. USX Corp.,* 819 F.2d 1270, 1276 (4th Cir.1987) ("Such conditions should be imposed as a matter of course in most cases").

8. The trial court's decision to permit a voluntary dismissal pursuant to Rule 41(a)(2) is discretionary, and we must uphold its decision unless we find an abuse of discretion. *Washington Metro. Area Transit Auth., supra,* 666 A.2d at 45; *District of Columbia Rent–A–Car Co. v. Cochran,* 463 A.2d 696, 698 (D.C. 1983). We also defer to the trial court's determination as to the imposition of terms and conditions. *Taragan, supra,* 267 U.S.App. D.C. at 389, 838 F.2d at 1339.

broken). In the event that the plaintiff finds that the conditions are "too onerous," the plaintiff may withdraw the motion and risk trial. *Duffy v. Ford Motor Co.*, 218 F.3d 623, 631 (6th Cir.2000); *accord, Yoffe, supra*, 582 F.2d at 983. However, the withdrawal must take place within a reasonable time. *Mortgage Guar. Ins. Corp. v. Richard Carlyon Co.*, 904 F.2d 298, 301 (5th Cir.1990); *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 555 (9th Cir.1986). In addition, a plaintiff may seek reconsideration, *Yoffe, supra*, 582 F.2d at 983, or challenge the reasonableness of the terms and conditions on appeal. *Duffy, supra*, 218 F.3d at 626–27; *McGregor v. Board of Comm'rs*, 956 F.2d 1017, 1021 (11th Cir. 1992); *Mortgage Guar. Ins., supra*, 904 F.2d at 300; *Unioil, Inc., supra*, 809 F.2d at 556; *Cauley, supra*, 754 F.2d at 770–71. If a plaintiff opts to accept the dismissal and ignore the accompanying conditions, the trial court may then dismiss the action *with* prejudice. *Lau, supra*, 792 F.2d at 930 n. 2; *McCall–Bey, supra*, 777 F.2d at 1184; *Yoffe, supra*, 582 F.2d at 983. Under such circumstances, the dismissal with prejudice is envisioned as a sanction for plaintiff's failure to pay. *Id.*

### B. Equitable Estoppel

■ The trial court held that the doctrine of equitable estoppel forecloses appellants from avoiding their obligation to pay Ford's attorney's fees and costs because Ford "relied on Plaintiffs' representations in Pennsylvania and Illinois by not moving to dismiss them, and now stand to be injured by Plaintiffs' failure to compensate them." Appellants argue that the trial court improperly carved out an equitable estoppel exception "to the general rule that plaintiffs may opt just not to pay" attorney's fees and costs. Ford counters that appellants made representations in Pennsylvania and Illinois that they fully intended to pay such fees and costs, that Ford relied upon these assurances, and to allow appellants to now walk away from those representations would result in prejudice to Ford's position. We agree that the principles of equitable estoppel are applicable here, and affirm the trial court's decision on that basis.[9]

■ The doctrine of equitable estoppel provides that "a party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effects." *First American Disc. Corp. v. Commodity Futures Trading Comm.*, 343 U.S.App. D.C. 71, 79, 222 F.3d 1008, 1016 (2000) (citations omitted); *see also Konstantinidis, supra* note.9, 200 U.S.App. D.C. at 73, 626 F.2d at 937 ("[v]irtually all courts agree that equitable estoppel may be applied to preclude a party from contradicting testimony or pleadings successfully maintained.in a prior judicial proceeding"); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982) ("Courts apply equitable estoppel to prevent a party from contradicting a position taken in a prior judicial proceeding. Equitable estoppel enables a party to

---

9. Because we affirm on the basis of equitable estoppel doctrine, we need not reach the trial court's other basis for denying the motion, that the proper time for appellants to withdraw their motion for voluntary dismissal had passed. In addition, we need not reach Ford's argument concerning the applicability of the judicial estoppel doctrine, particularly in light of the doctrine's questionable viability in this jurisdiction. *See Konstantinidis v. Chen*, 200 U.S.App. D.C. 69, 74, 626 F.2d 933, 938 (1980) (no District of Columbia court has ever adopted the judicial estoppel doctrine ... [and] the District's cases evidence some hostility to the concept). *But see Lassiter v. District of Columbia*, 447 A.2d 456, 461 (D.C. 1982) (applying judicial estoppel doctrine in juvenile case).

avoid litigating, in the second proceeding, claims which are plainly inconsistent with those litigated in the first proceeding") (citations omitted). In *Konstantinidis, supra,* note 9 the D.C. Circuit held that "[t]he party seeking to invoke the estoppel ... must have been an adverse party in the prior proceeding, must have acted in reliance upon his opponent's prior position, and must now face injury if a court were to permit his opponent to change positions." 200 U.S.App. D.C. at 73, 626 F.2d at 937.[10]

The record supports the trial court's ruling that appellants should be equitably estopped from avoiding their obligation to pay Ford's attorney's fees and costs. First, Ford was the adverse party in the two previous proceedings in both Illinois and Pennsylvania, where appellants made unqualified representations that they would meet the conditions attached to the *Thoubboron* voluntary dismissal by paying Ford's attorney's fees and costs as soon as the amount was quantified. Second, Ford relied on appellants' representations in both jurisdictions that they fully intended to pay Ford the amount awarded.[11] Were it not for appellants' representations, Ford clearly would have opposed the lifting of the stay in both the Pennsylvania and Illinois cases until the terms and conditions of the voluntary dismissal were satisfied. At that juncture, had appellants failed to satisfy the terms and conditions of the voluntary dismissal, a dismissal with prejudice would have been the appropriate remedy and would have provided Ford with "all the relief that could have been obtained after a full trial," and protected Ford from subsequent litigation pursuant to the doctrine of res judicata. 8 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 41.40[3] (3d ed.1997).[12] Finally, Ford suffered injury because Ford would be required to forego payment of its attorney's fees and costs despite appellants' ability to proceed with the *Doutt* and *Portwood* actions in 1995.[13]

To grant appellants' motion to dismiss with prejudice now, after appellants have pursued their claims in two other jurisdictions and after Ford has borne the risk of this subsequent litigation, would clearly prejudice Ford, a result inconsistent with Rule 41's purpose in protecting the defendant's interests in the face of a subsequent, duplicative lawsuit following a voluntary dismissal. *See Colombrito v. Kelly,* 764 F.2d 122, 133 (2d. Cir.1985) ("the purpose of ... [fee] awards is generally to reimburse the defendant for the litigation costs incurred in view of the risk (often the certainty) faced by the defendant that the

---

**10.** The requirements for "privity, reliance, and prejudice" reflects the doctrine's purpose "to ensure fairness in the relationship between the parties ... [by] prevent[ing] the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of law, unless prevented by the estoppel." *Konstantinidis, supra,* 200 U.S.App. D.C. at 73, 626 F.2d at 937 (citation omitted).

**11.** During oral arguments, Moore did not deny the truth of the representations reflected in those pleadings.

**12.** Ford also argues that, relying on the promise, it did not press Judge Levie for a prompt decision on the amount of the attorney's fees.

**13.** Although not explicitly applying equitable estoppel, the Eleventh Circuit in *McGregor, supra,* 956 F.2d at 1021, did implicitly recognize equitable estoppel considerations in denying a motion to withdraw. There, appellant argued that the district court abused its discretion in failing to permit him to withdraw his motion for voluntary dismissal when the court conditioned the voluntary dismissal on the payment of attorney's fees and costs. *Id.* The Eleventh Circuit concluded that despite the fact that appellant objected to the terms and conditions, he had initially offered to pay the "costs to date" as a condition of dismissal. *Id.* at 1022.

same suit will be refiled and will impose duplicative expenses"); *accord, Cauley, supra,* 754 F.2d at 772; *Taragan, supra,* 267 U.S.App. D.C. at 390, 838 F.2d at 1340. *See also Fisher, supra,* 940 F.2d at 1503 ("Rule 41(a)(2) exists chiefly for protection of defendants"); *Davis, supra,* 819 F.2d at 1273 ("In considering a motion for voluntary dismissal, the ... court must focus primarily on protecting the interests of the defendant"). A dismissal with prejudice would have had res judicata implications for both the Pennsylvania and Illinois suits, the avoidance of which had been appellants' reason for requesting a voluntary dismissal without prejudice in the first place as appellants acknowledged in *Thoubboron I, supra,* 624 A.2d at 1215.[14]

Appellants argue that the trial court improperly carved out an equitable estoppel exception to the general rule that plaintiffs may decide against paying a defendant's attorney's fees and costs in favor of a dismissal with prejudice. We disagree with this characterization of the trial court's equitable estoppel rationale and with appellants' interpretation of the case law concerning the right to opt for a dismissal with prejudice. As discussed above, plaintiffs have the option of withdrawing a voluntary dismissal conditioned as this one was, just as plaintiffs may choose not to comply with the terms and conditions and forego the dismissal without prejudice. However, the case law simply does not permit plaintiffs to exploit the advantage presented by a voluntary dismissal by pursuing the same litigation in other jurisdictions, reneging on unqualified promises to pay the defendant's attorney's fees and costs when quantified, and then

returning to court for a dismissal with prejudice when all the claims have been dismissed as time-barred in the other jurisdictions. *See McCall–Bey, supra,* 777 F.2d at 1184 (terms and conditions "are the quid for the quo of allowing the plaintiff to dismiss his suit without being prevented by the doctrine of res judicata from bringing the same suit again") (internal quotation marks omitted).

■ Although one means for courts to contend with a plaintiff who fails to comply with the terms and conditions of a voluntary dismissal is to dismiss with prejudice in order to promote the defendant's desire for finality, such a dismissal is usually reasonable only when this is a meaningful sanction. *See McCall–Bey, supra,* 777 F.2d at 1183–84 (while the remedy of dismissing the case with prejudice "should be adequate in the general run of cases[,]" there may be cases in which this would be an inadequate remedy or "no remedy at all"). A dismissal with prejudice at this juncture would not be a meaningful sanction for appellants' failure to comply with the terms and conditions of the voluntary dismissal. Instead, such a ruling would reward appellants for avoiding the express conditions of the voluntary dismissal at the expense of Ford. Clearly, the equities favor Ford here, and courts must be cognizant of such considerations when interpreting the rule. *See McCants, supra,* 781 F.2d at 857 (the court "must exercise its broad equitable discretion under Rule 41(a)(2) to weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such

---

14. Appellants' contention on appeal that "there was no possible 'benefit'" derived from dismissing their *Thoubboron* claims without prejudice is belied by their own representations before this court in *Thoubboron I, supra,* 624 A.2d at 1215. There, we noted that appellants "readily acknowledge that the request that their individual claims be voluntarily dismissed, rather than dismissed with prejudice, was made solely in order to protect their complaints in Pennsylvania and Illinois." *Id.*

 

conditions to the dismissal as are deemed appropriate").

### C. Other Issues

■ Appellants also argue that the 1994 voluntary dismissal order is now "moot," relying on language in *Thoubboron II, supra,* where we noted that "[w]hile it is possible that the present litigation may become moot at some time in the future as a result (at least in part) of the Illinois ruling, it is not moot yet ... [and, thus,] any suggestion of mootness is at best premature." 749 A.2d at 747. Appellants' argument that the dismissal without prejudice is "moot" may be a technically correct statement since the class action can no longer be refiled in any court following the *Portwood* dismissal. However, the mootness argument is specious because appellants accepted the terms and conditions of the dismissal without prejudice in 1994 as evidenced by their representations in the two other jurisdictions regarding their unqualified intention to pay "whatever fees and costs the court eventually awards" "as soon as the amount" is quantified. The so-called "mootness" of the dismissal without prejudice now does not obviate its usefulness to appellants in 1994 when facing stays in *Doutt* and *Portwood* and the potential res judicata effect of a dismissal with prejudice in *Thoubboron* and, thus, they cannot escape those conditions with what the trial court recognized as a procedurally faulty argument. Neither the equities nor the case law countenances such gamesmanship. *See Chavez v. Illinois State Police,* 251 F.3d 612, 656 (7th Cir. 2001) ("It is true that a plaintiff seeking a voluntary dismissal is not required to accept whatever conditions the district court may impose. The appropriate response, however, would be to decline to accept the conditions, not to accept them and then argue that their imposition was an abuse of discretion") (citation and internal quotations omitted); *McGregor, supra,* 956 F.2d at 1021 (appellants' offer to pay costs precludes court from granting subsequently filed motion to withdraw voluntary dismissal).

■ In this appeal, appellants also attempt to revisit the issue of the reasonableness of Ford's attorney's fees and costs. Appellants argue that the $63,669 in attorney's fees and costs are disproportionate in amount when compared to the $36,734 in potential claims of the *Thoubboron* plaintiffs. The reasonableness of attorney's fees and costs was determined by this court in *Thoubboron II, supra,* 749 A.2d at 747, and, thus, this issue may not be raised again here.[15] *Lynn v. Lynn,* 617 A.2d 963, 970 (D.C.1992) (absent exceptional circumstance, law of case doctrine precludes reexamination of issue raised in a prior appeal). Indeed, more broadly, it is a general principle of appellate practice that "where an argument could have been raised on an initial appeal, it is inappropriate to consider the argument on a second appeal following remand." *Hartman v. Duffey,* 319 U.S.App. D.C. 169, 173, 88 F.3d 1232, 1236 (1996) (citation omitted).

For the foregoing reasons, the decision of the trial court is

*Affirmed.*

---

15. Appellants' argument also suffers from its points of comparison. Clearly, in 1994 when the dismissal without prejudice was issued, appellants did not envision that they would be confined to potential claims from only the *Thoubboron* plaintiffs since the potential existed for the realization of claims from both the *Doutt* and *Portwood* actions.