2020 IL App (1st) 192037

FIFTH DIVISION
Opinion filed: July 2, 2020

No. 1-19-2037

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| LI JUN HUANG as Mother and Next Friend of ADRIAN ZHAUNG, a minor, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | No. 2016 L 3142 |
| v. | ) ) | |
| VICTORIA URIBE, M.D., MICHAEL HOFFMAN, M.D., ROBERT ANDERSON, M.D., DAVID MATUSAIK, D.O., KRISTEN ZEITLER, M.D., MARIANNE SENESE, M.D., MEGAN CLIPP, M.D., ELMHURST CLINIC, LLC, an Illinois corporation, and ELMHURST HOSPITAL, an Illinois corporation, | ) ) ) ) ) ) ) | Honorable Brendan A. O'Brien, Kathy M. Flanagan, John B. Callahan, Jr., Irwin J. Solganick, James P. Flannery, |
| Defendants-Appellees. | ) | Judges, Presiding. |

_____

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Justices Rochford and Delort concurred in the judgment and opinion.

_____

**OPINION**

¶ 1 The plaintiff, Li Jun Huang (Huang), as mother and next friend of Adrian Zhuang (Adrian), a minor, filed the instant action asserting claims for medical negligence against the defendants, Victoria Uribe, M.D.; Michael Hoffman, M.D.; Robert Anderson, M.D.; David Matusiak, D.O.; Kristen Zeitler, M.D.; Marianne Senese, M.D.; Megan Clipp, M.D.; Elmhurst Clinic, LLC., an Illinois corporation (hereinafter referred to as the Clinic); and Elmhurst Hospital, an Illinois Corporation (hereinafter referred to as the Hospital). The circuit court entered orders dismissing the plaintiff's action against the Hospital and granting summary judgment in favor of the remaining defendants, and the plaintiff has appealed. For the reasons that follow, we affirm in part, reverse in part, and remand the matter to the circuit court with directions.

¶ 2 On November 23, 2014, the plaintiff filed a complaint, asserting claims for medical negligence against the defendants. On March 30, 2015, the plaintiff voluntarily dismissed all of the defendants except Dr. Clipp from that action. Dr. Clipp was voluntarily dismissed by the plaintiff on May 15, 2015.

¶ 3 On March 28, 2016, the plaintiff refiled the medical negligence claims against the defendants. In the complaint in this refiled action, the plaintiff alleged that "[o]n or about February 20, 2007, ADRIAN was diagnosed with a profound impairment to his right eye with changes in vascular appearance and amblyopia" and was also "diagnosed with a myelinatrion of the nerve fiber layer of the right retina and extreme anisomyopia that he had been suffering from since birth [on January 7, 2003]." The complaint alleged that Adrian was under the continuous care of the defendants "from on or about January 7, 2003[,] through on or about March 22, 2007," and charged that the defendants "failed to detect, diagnose, treat, evaluate and/or refer ADRIAN to a specialist for any diseases or defects to his right eye[,]" resulting in severe and

permanent injuries to Adrian. According to the complaint, each of the individual doctor defendants was, at all times relevant, an employee, agent, or apparent agent of both the Clinic and the Hospital.

¶ 4    The plaintiff's then attorneys, Barney & Karamanis, LLP (B&K), secured a report dated March 19, 2016, from Dr. Stephen Nelson M.D. which states that, in his opinion, the individual physicians at the Clinic breached the standard of care by failing to perform adequate vision assessments on Adrian that delayed the diagnosis and treatment of Adrian's amblyopia, "which may have contributed to a worse outcome."

¶ 5    On July 15, 2016, Dr. Nelson issued a second report addressed to B&K, stating that, in his opinion to a reasonable degree of medical certainty, the individual doctor defendants deviated from the standard of care in their treatment of Adrian, and it is more likely than not that, had Adrian's visual acuity loss in his right eye been screened and detected earlier, he would not have suffered from the severe and debilitating injury to, and loss of, vision in his right eye.

¶ 6    During the period from May 2016 through September 2016, the defendants filed a variety of motions to dismiss the plaintiff's complaint. On January 10, 2017, the circuit court entered a written order granting the Hospital's motion to dismiss and denying the motions to dismiss of the other defendants. As to the order granting the Hospital's motion to dismiss, the circuit court found no reason to delay enforcement or appeal.

¶ 7    On April 2, 2018, Drs. Anderson, Zeitler, Uribe, Matusiak, and Clipp, each filed a motion for summary judgment, arguing that the plaintiff's action against them is barred by the eight-year statute of repose set forth in section 13-212(b) of the Code of Civil Procedure (Code) (735 ILCS 5/13-212(b) (West 2014)).

¶ 8    On May 1, 2018, B&K filed a motion to withdraw as counsel for the plaintiff. In that motion, James A. Karamanis asserted that there was a "philosophical difference [with the plaintiff] on how to handle the case." We find no order in the record disposing of that motion.

¶ 9    On August 16, 2018, Judge Kathy M. Flanagan denied each of the defendant doctors' motion for summary judgment. On September 17, 2018, Drs. Anderson, Zeitler, Uribe, Matusiak, and Clipp filed a motion to reconsider the denial of their respective summary judgment motions.

¶ 10    On June 26, 2018, an order was entered setting the instant case for trial on September 17, 2019.

¶ 11    On October 12, 2018, the circuit court entered an order setting the matter for a case management conference on November 19, 2018, at which time the parties were to report on the setting of any remaining depositions of Supreme Court Rule 213(f)(1) lay witnesses and (f)(2) independent expert witnesses (Ill. S. Ct. R 213(f)(1), (2) (eff. Jan. 1, 2018)). On November 19, 2018, an order was entered continuing the case until December 11, 2018, for a report on the status of witness depositions.

¶ 12    On January 7, 2019, Judge Flanagan ruled on the September 17, 2018 motion of Drs. Anderson, Zeitler, Uribe, Matusiak, and Clipp to reconsider the denial of their motions for summary judgment. She denied the motion to reconsider as to Drs. Anderson and Zeitler, but granted the motion and entered summary judgment in favor of Drs. Uribe, Matusiak, and Clipp, finding that the plaintiff's original action against Drs. Uribe, Matusiak, and Clipp was filed after the expiration of the eight-year period of repose set forth in section 13-212(b) of the Code.

¶ 13    On January 28, 2019, the circuit court continued this matter to March 8, 2019, at which time discovery of Supreme Court Rule 213(f)(1) witnesses was to be closed and the parties were to report on dates for the taking of the depositions of any remaining Supreme Court Rule

213(f)(2) witnesses. When the matter was heard on March 8, 2019, the parties were ordered to complete Supreme Court Rule 213(f)(1) and (f)(2) witness depositions by April 15, 2019, and the matter was continued to April 17, 2019. On April 17, 2019, the matter was continued to May 10, 2019, and the parties were ordered to complete Supreme Court Rule 213(f)(2) witness depositions by May 1, 2019, with the schedule for the disclosure of Supreme Court Rule 213(f)(3) (Ill. S. Ct. R 213(f)(3) (eff. Jan. 1, 2018)) controlled expert witnesses to be set at the next case management conference.

¶ 14    On May 1, 2019, B&K filed a second motion to withdraw as plaintiff's counsel, citing philosophical differences between the law firm and Huang regarding the prosecution of the case, resulting in an "irretrievable breakdown" between the law firm and the client "making further legal representation in this matter not possible." On May 10, 2019, the circuit court entered and continued B&K's motion to withdraw and set the matter for a case management conference on May 17, 2019. On May 17, 2019, the circuit court again continued B&K's motion to withdraw as plaintiff's counsel and set the matter for a case management conference on May 24, 2019. On May 24, 2019, the plaintiff was ordered to answer Supreme Court Rule 213(f)(3) witness interrogatories by June 28, 2019, and produce any disclosed experts for deposition by July 26, 2019. In addition, the plaintiff was ordered to provide, by June 28, 2019, three available dates for the taking of the expert witness' depositions. The matter was continued for further case management on September 4, 2019.

¶ 15    On June 24, 2019, B&K, which had not yet been granted leave to withdraw as plaintiff's counsel, filed an emergency motion to continue the trial of this case, which had been set for September 17, 2019. In that motion, Karamanis stated that B&K's motion to withdraw as plaintiff's counsel had been denied on May 24, 2019, and asserted that the plaintiff was unable to

disclose Supreme Court Rule 213(f)(3) expert witnesses by June 28, 2019, as ordered "due to short notice, experts' schedules and issues with payment of experts' costs." That motion was heard and denied by Judge Irwin J. Solganick on June 25, 2019.

¶ 16    On June 27, 2019, B&K filed an emergency motion to withdraw as plaintiff's counsel, in which Karamanis advised the court that there was an "irretrievable breakdown between Plaintiff's counsel and the minor plaintiff's representative, Li Jun Huang, which makes further legal representation impossible." He again stated that the plaintiff was unable to disclose an expert witness by June 28, 2019, "due to short notice, experts' schedules and issues with payment of experts' costs." He also alleged that B&K "has been diligently trying to secure the necessary expert disclosures" but had been unable due to an "irretrievable breakdown in the attorney-client relationship and the client's refusal to pay experts' costs despite an agreement to do so." According to that motion, the plaintiff had been advised that without an expert witness this case would be dismissed. On June 28, 2019, the circuit court entered and continued B&K's emergency motion to withdraw to July 10, 2019, and ordered Huang to appear on that date. In addition, the date for the plaintiff to disclose Supreme Court Rule 213(f)(3) witnesses was extended to July 10, 2019.

¶ 17    On July 10, 2019,  B&K was granted leave to withdraw as plaintiff's counsel and Huang was ordered " to file a *pro se*  appearance or retain new counsel to file an appearance by 7-31-19." In that same order, the circuit court granted the plaintiff leave to file answers to Supreme Court Rule 213(f)(3) interrogatories disclosing a controlled expert witness and ordered the expert's deposition to be completed by August 7, 2019. The order also provided that the withdrawal of the plaintiff's attorneys "will not serve as a basis for continuance of the trial set

for 9-17-19." The matter was continued to August 2, 2019, for "status on appearance of plaintiff."

¶ 18    In the answer to Supreme Court Rule 213(f)(3) interrogatories filed on July 10, 2019, the plaintiff disclosed Dr. Nelson as a controlled expert witness. The answer states that Dr. Nelson was expected to testify that the individual doctor defendants and the Clinic each breached the standard of care and were negligent in their care and treatment of Adrian by failing to document and preform adequate vision assessments "which delayed the diagnosis and treatment of Adrian's amblyopia and may have worsened his visual acuity." The document also states that Dr. Nelson was expected to testify to the opinions set forth in the reports he authored, copies of which were attached.

¶ 19    On July 18, 2019, Drs. Hoffman, Anderson, Zeitler, and Senese filed motions for summary judgment, arguing that, according to the plaintiff's answer to Supreme Court Rule 213(f)(3) interrogatories, none of Dr. Nelson's opinions involve any care or treatment provided to Adrian by Dr. Zeitler or Dr. Senese, and that as to Drs. Hoffman and Anderson, Dr. Nelson failed to offer an opinion that any purported negligence on their part proximately caused injury to Adrian.

¶ 20    On August 2, 2019, an order was entered continuing the matter to September 4, 2019, for "trial certification & completion of experts [*sic*]." At that hearing, Huang appeared and advised the court that she was still looking for an attorney.

¶ 21    On August 7, 2019, Drs. Hoffman, Anderson, Zeitler and Senese filed an emergency motion to bar the testimony of Dr. Nelson, arguing that the plaintiff had not provided any dates for the taking of Dr. Nelson's deposition which, according to the order of July 10, 2019, was to have been taken by August 7, 2019. In addition, they asked the court to set an expedited hearing

date on their motions for summary judgment. On August 8, 2019, Judge John R. Callahan, Jr. granted the motion to bar Dr. Nelson from testifying and continued the matter for status on August 16, 2019.

¶ 22 On August 13, 2019, Drs. Hoffman, Anderson, Zeitler and Senese and the Clinic filed a motion for summary judgment, arguing that, based on the August 8, 2019 order barring Dr. Nelson from testifying, the plaintiff "is unable to present any admissible evidence to establish the elements necessary to prevail on a claim for medical negligence," and therefore, "summary judgment for the defendants is appropriate and mandated by the applicable case law as to both the medical negligence counts and the *res ipsa loquitur* counts contained within the Plaintiff's pending complaint."

¶ 23 On August 14, 2019, Huang sent a letter to Judge Brendan O'Brien stating that she had not filed a *pro se* appearance and was still looking for an attorney. Attached to that letter was a copy of Dr. Nelson's report dated March 19, 2016, and the doctor's CV.

¶ 24 On August 16, 2019, the circuit court entered an order setting a briefing schedule on the pending summary judgment motions and continuing the matter to September 11, 2009, for a hearing on the motions. In addition, the circuit court struck the previously set date of September 4, 2019, for trial certification. On that same date, an attorney, John S. Xydakis, filed what is styled as a Limited Scope Appearance on behalf of the plaintiff. The document states that Xydakis was appearing as attorney for the plaintiff for the limited purpose of filing a motion to vacate the September 17, 2019 trial date, reset the date for Supreme Court Rule 213(f)(3) disclosures, and vacate the August 8, 2019 order barring Dr. Nelson from testifying.

¶ 25 On August 23, 2019, Judge James P. Flannery denied a motion to reset the trial date. On August 27, 2019, Judge O'Brien denied both the motion to reset the date for Supreme Court Rule

213(f)(3) disclosures and the motion to vacate the August 8, 2019 order barring Dr. Nelson from testifying, and granted Xydakis leave to withdraw his limited scope appearance.

¶ 26     On August 30, 2019, Zane Smith filed his appearance on behalf of the plaintiff and filed a response to the pending summary judgment motions filed by Drs. Hoffman, Anderson, Zeitler and Senese and the Clinic.

¶ 27     On September 11, 2019, a hearing was held on the pending motions for summary judgment. Following that hearing, Judge O'Brien granted the motion, entering summary judgment in favor of Drs. Hoffman, Anderson, Zeitler and Senese and the Clinic, and denied the plaintiff leave to file an amended complaint.

¶ 28     On October 4, 2019, the plaintiff filed a notice of appeal followed by an amended notice of appeal filed on October 10, 2019, appealing from: the circuit court's order granting summary judgment on September 11, 2019; the order barring Dr. Nelson from testifying entered on August 8, 2019; the order of August 23, 2019, denying the motion to reset the trial date; the order of August 27, 2019, denying the motion to reset the date for Supreme Court Rule 213(f)(3) witness disclosures and denying the motion to vacate the August 8, 2019 order barring Dr. Nelson from testifying; the order of January 10, 2017, dismissing the Hospital; and the order granting summary judgment entered on January 7, 2019.

¶ 29     During the pendency of this appeal, the plaintiff filed a motion to dismiss the Hospital by agreement. On February 11, 2020, this court entered an order pursuant to that motion, dismissing the Hospital as a party to this appeal. As a consequence, the propriety of the circuit court's January 10, 2017 order dismissing the Hospital is no longer an issue in this appeal.

¶ 30     We first address the plaintiff's claim of error in the summary judgment granted on January 7, 2019, in favor of Drs. Uribe, Matusiak, and Clipp. In urging reversal, the plaintiff

argues the circuit court erred in finding that the claims against the three doctors are barred by the eight-year statute of repose set forth in section 13-212(b) of the Code. The plaintiff asserts that the physicians at the Clinic engaged in a continuous course of treatment of Adrian until his last visit on March 22, 2007, and contends that the statute of repose did not commence running on the claims against Drs. Uribe, Matusiak, and Clipp until that date. The plaintiff argues that, as a consequence, the filing of the original action on November 3, 2014 was timely. According to the plaintiff, "[t]he negligent checkup/monitoring of the [*sic*] Adrian's vision and/or eyes occurred over the course of repeated visits to a single facility *** , which would at least create genuine issues of material fact regarding whether [Drs.] Clipp, Uribe, and Matusiak's treatment of Adrian had been part of a continuous course of negligent treatment." The plaintiff also contends that Adrian's vision problem was first discovered on February 20, 2007, when he was diagnosed with amblyopia, myelination of the nerve fiber layers of the right retina, and extreme anisomyopia of the right eye; and argues that "the trial court erred by counting the eight-year period in the statute of repose from the date of the last treatment administered by each Defendant physician, and not from the date of discovery of the injury." We find no merit in either argument.

¶ 31    Summary judgment is to be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). As our review of the summary judgments entered in this action is *de novo* (*In re Estate of Hoover,* 155 Ill. 2d 402, 411 (1993)), we have independently examined all of the pleadings and evidentiary material presented in support of and in opposition to the summary judgment motions in their light most favorable to the plaintiff. *Kolakowski v. Voris*, 83 Ill. 2d 388, 398 (1980). From that evidentiary material and its inferences most favorable to the plaintiff, we adduce the

following facts relevant to the disposition the plaintiff's appeal from the summary judgment entered in favor of Drs. Uribe, Matusiak, and Clipp.

¶ 32    Dr. Matusiak treated Adrian at the Clinic on September 1, 2006. Dr. Clipp treated Adrian at the Clinic on April 13, 2006. Dr. Uribe testified in her deposition that she saw Adrian at the Clinic on January 23, 2003, March 10, 2003, April 7, 2003, October 16, 2003, January 24, 2004, April 9, 2004, and July 23, 2004. Huang testified that Dr. Uribe checked Adrian's eyesight as late as August 2006. There is no evidence in the record that Dr. Matusiak treated Adrian on any date after September 1, 2006 or that Dr. Clipp treated him on any date after April 13, 2006. As to Dr. Uribe, although she testified that she last saw Adrian on July 23, 2004, Huang's testimony fixed August 2006 as the last date on which Dr. Uribe saw Adrian.

¶ 33    Section 13-212(b) of the Code provides, in relevant part, that:

> "(b) *** no action for injury or death against any physician *** or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 8 years after the date on which occurred the act or omission or occurrence alleged in such action to be the cause of such injury or death where the person entitled to bring the action was, at the time the cause of action accrued, under the age of 18 years; provided, however, that in no event may the cause of action be brought after the person's 22nd birthday." 735 ILCS 5/13-212(b) (West 2012).

¶ 34    The plaintiff's original complaint naming Drs. Uribe, Matusiak, and Clipp as defendants and charging negligence in their treatment of Adrian was filed on November 23, 2014, more than eight years after the last date upon which any of the these defendants treated Adrian. Nevertheless, the plaintiff argues that, because Adrian received continuous treatment at the

Clinic until his last visit on March 22, 2007, the eight-year statute of repose set forth in section 13-212(b) of the Code did not begin to run on the negligence claims against Drs. Uribe, Matusiak, and Clipp, who are alleged to have been agents, employees, or apparent agents of the Clinic, until March 22, 2007.

¶ 35    The plaintiff correctly states that, "if a physician engages in a continuous and unbroken course of negligent treatment, and the treatment is so related as to constitute one continuing wrong, the statute of repose will not start to run until the last date of negligent treatment." See *Cunningham v. Huffman*, 154 Ill. 2d 389, 406 (1993). However, "once treatment by the negligent physician is discontinued, the statute of repose begins to run." *Cunningham*, 154 Ill. 2d at 406. Although Adrian may well have been treated at the Clinic until March 22, 2007, there is no genuine issue of fact on the question of the last date upon which Dr. Uribe, Dr. Matusiak, or Dr. Clipp treated him. Further, the plaintiff has not alleged, nor is there any evidence in the record, that any of the physicians who treated Adrian at the Clinic within eight years of the filing of the plaintiff's original complaint were agents or employees of Drs. Uribe, Matusiak, or Clipp subjecting any of them to liability on a theory of *respondeat superior*.

¶ 36    In what appears to be an alternative argument, the plaintiff asserts that "[t]he statute of repose for a medical negligence claim arising from an injury diagnosed in a four-year-old should be deemed tolled until the discovery of that injury." According to the plaintiff,  Adrian's vision problem was first discovered on February 20, 2007, and as a consequence, the eight-year statute of repose did not commence running until that date.

¶ 37    There is simply no authority for the proposition that a statute of repose does not commence running until the injured party discovers his injury. Rather, the authority is to the contrary. The supreme court in *Cunningham* held that the statute of repose is triggered once

treatment terminates, "regardless of whether or not the patient is aware of the negligence at termination of treatment." *Cunningham*, 154 Ill. 2d at 406.

¶ 38    Based upon the foregoing analysis, we find that there is no genuine issue of fact on the question of whether the plaintiff's action against Drs. Uribe, Matusiak, and Clipp was commenced prior to the expiration of the eight-year statute of repose, and we affirm the summary judgment entered in their favor on January 7, 2019.

¶ 39    Next, we address the propriety of the summary judgment entered in favor of Drs. Hoffman, Anderson, Zeitler, and Senese and the Clinic on September 11, 2019. As part of that analysis, we first review the circuit court's orders: barring Dr. Nelson from testifying; denying the motion to vacate the order barring Dr. Nelson from testifying; denying the plaintiff's motion to reset the trial date; and denying the motion to reset the date for Supreme Court Rule 213(f)(3) witness disclosures.

¶ 40    No argument has been made in the plaintiff's brief addressing either the circuit court's order of August 23, 2019, denying the motion to reset the trial date or the order of August 27, 2019, denying the motion reset the date for Supreme Court Rule 213(f)(3) witness disclosures. Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) provides that points not argued in an appellant's brief are waived. *Meyers v. Kissner*, 149 Ill. 2d 1, 8 (1992). Waiver, however, is a limitation on the parties, not on a reviewing court. The responsibility of a reviewing court for a just result may sometimes override the considerations of waiver. *Hux v. Raben*, 38 Ill. 2d 223, 224-25 (1967); *Wagner Excello Foods, Inc. v. Fearn International, Inc.*, 235 Ill. App. 3d 224, 235 (1992).

¶ 41    Underlying the plaintiff's argument that the circuit court erred in granting summary judgment in favor of Drs.  Hoffman, Anderson, Zeitler, and Senese and the Clinic is the

argument that the circuit court abused its discretion both in barring Dr. Nelson from testifying by reason of the failure to present him for a deposition and in denying the motion to vacate that order. The plaintiff correctly notes that a medical negligence claim can only be established through the testimony of a medical expert (see *Walski v. Tiesenga*, 72 Ill. 2d 249, 256 (1978)) and argues that, given the fact that Adrian is a minor, the order barring Dr. Nelson from testifying was unduly punitive and harsh as it effectively disposed of his claims against Drs. Hoffman, Anderson, Zeitler, and Senese and the Clinic. The plaintiff contends that, following the withdrawal of B&K, Huang was allowed only a 30-day period to retain new counsel before the deadline for the taking of Dr. Nelson's deposition. The plaintiff argues that the circuit court "wrongly ordered Li Jun Huang to file a *pro se* appearance" and contends that the only reason Dr. Nelson was not produced for a deposition was because Huang "suddenly became a *pro se* litigant shortly before the deadline to depose the expert." Relying upon the decisions in *Comento v. Foster McGaw Hospital*, 167 Ill. App. 3d 1023 (1988), and *Kubian v. Labinsky*, 178 Ill. App. 3d 191 (1988), the plaintiff argues that, in the interests of justice, the circuit court should have denied the motion to bar Dr. Nelson from testifying, or vacated the barring order, and reopened discovery to allow additional time for the taking of Dr. Nelson's deposition and a trial on the merits.

¶ 42    Drs. Hoffman, Anderson, Zeitler, and Senese and the Clinic argue that the plaintiff's failure to file a report of proceedings before the circuit court covering the hearings when Dr. Nelson was barred from testifying and the motion to vacate that order was denied, gives rise to the presumption that the orders were entered in conformity with the law and were supported by sufficient evidence, citing *Foutch v. O'Bryant*, 99 Ill. 2d 389 (1984). In response to the plaintiff's assertion that Huang was only allowed 30 days following the withdrawal of B&K to retain new

counsel before the deadline for the taking of Dr. Nelson's deposition, they note that the record reflects that B&K first moved to withdraw as the plaintiff's counsel on May 1, 2018, and that in that motion it was alleged that there were philosophical differences with Huang on how to handle the case. They note further that B&K filed a second motion to withdraw on May 1, 2019, again alleging philosophical differences with Huang that made further representation of the plaintiff impossible. They argue that any requirement that the plaintiff retain new counsel one month prior to the deadline set by the circuit court for the taking of the depositions of expert witnesses was a crisis of Huang's making. As to the reasons why no date was offered by the plaintiff for Dr. Nelson's deposition and why he was not produced for a deposition as ordered, they argue that it was Huang's behavior and refusal to pay Dr. Nelson's fee. In that regard, Drs. Hoffman, Anderson, Zeitler, and Senese and the Clinic rely upon the representations of Karamanis in B&K's emergency motion to withdraw filed on June 27, 2019, contending that the motion "laid out in great detail the behavior of [Huang] *** that led to the very problem about which she now complains regarding the availability of an expert witness." They note that the motion states that Huang had: become hostile, threatened the law firm, refused to listen to counsel's advice, engaged in inappropriate communications with a retained expert, prevented B&K from effectively prosecuting the case on behalf of Adrian, and refused to pay experts' costs despite an agreement to do so. They also take issue with the plaintiff's contention that the circuit court "wrongly ordered Li Jun Huang to file a *pro se* appearance," noting that the circuit court's order of July 10, 2019, states that she was ordered "to file a *pro se* appearance or retain new counsel to file an appearance by 7-31-19."

¶ 43     Illinois Supreme Court Rule 219(c) authorizes the circuit court to prescribe sanctions, including barring a witness from testifying, when a party fails to comply with the court's orders

regarding discovery. Ill. S. Ct. R. 219(c) (eff. July 1, 2002); *Athans v. Williams*, 327 Ill. App. 3d 700, 703 (2002). The imposition of sanctions is a matter committed to the sound discretion of the trial court, and its decision in such a matter will not be disturbed on appeal absent a clear abuse of that discretion. *Id.* When abuse of discretion is the applicable standard of review, the question is not whether the reviewing court agrees with the action taken by the trial court; rather, the question is whether the trial court "acted arbitrarily, without employing conscious judgment, or whether, in view of all of the circumstances, the court exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." *State Farm Fire & Casualty Co. v. Leaverton*, 314 Ill. App. 3d 1080, 1083 (2000).

¶ 44    In determining whether the circuit court has abused its discretion in applying a sanction, this court must look to the same factors that the circuit court was required to consider in deciding upon the appropriate sanction under the circumstances. *Smith v. P.A.C.E.*, 323 Ill. App. 3d 1067, 1076 (2001). Those factors include: (1) the surprise to the adverse party; (2) the prejudicial effect of the witness' testimony; (3) the nature of the testimony; (4) the diligence of the adverse party; (5) the timeliness of the objection; and (6) the good faith of the party offering the testimony. *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314 (1993). No single factor is determinative, as each case presents a unique factual situation which must be taken into consideration when determining whether a particular sanction is proper. *Smith*, 323 Ill. App. 3d at 1076.

¶ 45    In this case, the defendants were not surprised that Dr. Nelson was expected to testify as the plaintiff's controlled expert; he was disclosed, at the latest, on July 10, 2019. The defendants would not have been prejudiced if, as an alternative to barring Dr. Nelson from testifying, the trial date had been continued and the plaintiff ordered to produce the doctor for a deposition on

some future date. The defendants were aware that Dr. Nelson was expected to testify that they breached the standard of care resulting in injury to Adrian. Further, when Dr. Nelson was not produced for his deposition by August 7, 2019, the defendants timely moved to bar his testimony. Clearly, some sanction was warranted under the circumstances; the question is whether barring Dr. Nelson's testimony was an appropriate sanction.

¶ 46    The factual assertions in B&K's three motions to withdraw and its June 24, 2019 motion to continue the trial date relate a scenario explaining why Dr. Nelson was not produced for his deposition by August 7, 2019. There was a breakdown in the attorney-client relationship between B&K and Huang and Huang was refusing to pay Dr. Nelson's fees. As early as May 1, 2018, over a month prior to the trial court's order setting this case for trial on September 17, 2019, Huang and B&K differed as to the handling of the case. By May 1, 2019, it was alleged that there was an "irretrievable breakdown" in the attorney-client relationship. On May 10, 2019, four months prior to the scheduled trial date, the trial court ordered the plaintiff to answer Supreme Court Rule 213(f)(3) interrogatories and provide three available dates for the controlled expert's deposition, which was to take place by June 28, 2019, and produce the disclosed expert for deposition by July 26, 2019. The June 24, 2019 motion to continue the trial date filed by B&K states that the plaintiff was unable to answer Supreme Court Rule 213(f)(3) interrogatories by June 28, 2019, due to, among other reasons, "issues with payment of experts' costs." B&K's June 27, 2019 emergency motion to withdraw was even more specific. It states that there was an irretrievable breakdown in the relationship between the law firm and Huang and that Huang was refusing to pay experts' costs despite an agreement to do so. Although Dr. Nelson was finally disclosed as the plaintiff's controlled expert on July 10, 2019, he did not appear for a deposition by August 7, 2019, resulting in the defendants' motion to bar his testimony.

¶ 47    Had Huang been the injured party for whom recovery was sought, we would have no difficulty in concluding that the trial court did not abuse its discretion in barring Dr. Nelson's testimony as a sanction, but Huang is not the plaintiff in her individual capacity. She brought this action on behalf of Adrian, a minor. Illinois' public policy favors the rights of minors. *Severs v. County Mutual Insurance Co.*, 89 Ill. 2d 515, 520 (1982). Minor litigants like Adrian are entitled to special protection by the court in order to do substantial justice, particularly a court should insure that the minor's rights are protected even from the actions of his representative. *Id.*

¶ 48    In a medical negligence action, a plaintiff must present expert testimony establishing that the defendant deviated from the standard of care and that the deviation proximately caused the injury for which recovery is sought. *Walski v. Tiesenga*, 72 Ill. 2d 249, 256 (1978)). Where a plaintiff is unable to present such expert testimony, summary judgment in favor of the defendant is appropriate. *Higgens v. House*, 288 Ill. App. 3d 543, 547 (1997). Barring the testimony of Dr. Nelson, the plaintiff's only disclosed controlled medical expert witness, necessarily resulted in the loss of Adrian's medical negligence claims against Drs. Hoffman, Anderson, Zeitler, and Senese and the Clinic. The record supports the conclusion that the reason Dr. Nelson was not produced for his deposition as ordered was the result of a breakdown in the attorney-client relationship between B&G and Huang and Huang's refusal to pay Dr. Nelson's fee.

¶ 49    The severity of the sanction required under the circumstances in this case must be balanced against the court's obligation to protect the rights of Adrian, a minor. When balanced, we believe that sanctions short of barring Dr. Nelson's testimony would have achieved that balance. In response to the defendants' motion to bar Dr. Nelson from testifying, the first motion filed by the defendants by reason of the plaintiff's failure to produce him for a deposition, an appropriate order would have been one that continued the trial date, ordered that Dr. Nelson be

produced for a deposition on some future date sufficiently in advance of the trial date so as not to prejudice the defendants, and ordered a monetary sanction sufficient to defray the defendants' expenses in being required to seek court intervention. Such an order would have avoided prejudice to the minor and secured for the defendants the deposition to which they were entitled. We believe that barring the testimony of Dr. Nelson as a sanction under the circumstances of this case failed to protect Adrian's rights and was an abuse of discretion as was the denial of the motion to vacate that order. It is for these reasons that we reverse the order barring Dr. Nelson from testifying entered on August 8, 2019, and the order of August 27, 2019, denying the motion to vacate that order.

¶ 50    The only basis for granting summary judgment in favor of Drs. Hoffman, Anderson, Zeitler, and Senese and the Clinic was the fact Dr. Nelson, the plaintiff's only disclosed controlled medical expert witness, had been barred from testifying, which left the plaintiff without an expert witness competent to testify as to standard of care or proximate cause. It follows, therefore, that, having reversed the order barring Dr. Nelson from testifying, we also reverse the summary judgment entered in favor of Drs. Hoffman, Anderson, Zeitler, and Senese and the Clinic on September 11, 2019.

¶ 51    We remand this case to the circuit court with directions to set a new trial date on the plaintiff's claims against Drs. Hoffman, Anderson, Zeitler and Senese and the Clinic and order the plaintiff to arrange for Dr. Nelson's deposition within some reasonable period of time in advance of continued trial date so as not to prejudice the defendants. We leave it to the discretion of the trial court on remand to determine whether a monetary sanction against Huang is appropriate.

Affirmed in part, reversed in part and remanded with directions.